**STATE of Iowa, Appellee,**

v.

**Curtis James WILLIAMS, Appellant.**

No. 04–0126.

Supreme Court of Iowa.

April 15, 2005.

Linda Del Gallo, State Appellate Defender, and Stephan J. Japuntich, Assistant Appellate Defender, for appellant.

Thomas J. Miller, Attorney General, Cris Douglass, Assistant Attorney General, Thomas J. Ferguson, County Attorney, and Linda Myers, Assistant County Attorney, for appellee.

CADY, Justice.

Curtis Williams appeals from the judgment on his conviction for domestic abuse assault, third offense. He claims the evidence was insufficient to convict him, and his trial counsel was ineffective. For the reasons that follow, we affirm the judgment of the district court.

## I. Background Facts and Proceedings

The factual background of this case is based on events that occurred on September 29, 2003. On that morning, Williams and his wife, Raegen, were getting their children ready for school. Williams' cell phone received two calls from an unidentified "private number." Each time the phone rang, Raegen answered it, and the caller promptly ended the call without any communication. When a third call came from the "private number," Raegen had Williams answer the phone by saying "hello." She then brought the phone to her own ear, at which point a woman said, "Stop playing, Curtis. Where you at?" Raegen yelled at the woman, who terminated the call.

In the minutes that followed, Raegen called 9–1–1. She told the 9–1–1 operator, "Me and my husband had a fight. He was choking me." The 9–1–1 operator asked to speak to Williams. The operator then asked Williams what happened, and he said, "We had an argument this morning. We had a minor altercation this morning, and there was some pushing going on. That's about it." At the same time, Raegen can be heard in the background exclaiming, "He's lying." The operator asked Williams if he put his hands on Reagan's throat, and Williams denied that

he did so. Raegen can then be heard to say, "He's lying. He did."

Officers Frisch and Wheaton were dispatched to the Williams residence in response to the call. When they arrived, Raegen was crying and agitated. She had an inch-long vertical red mark on the front of her neck. She told the officers Williams had choked her with both hands. She later gave a handwritten statement to the police, in which she stated:

[H]e start choking me, and choking me. I couldn't breathe, I didn't think he was going to stop. It hurt & I was getting light headed. I was trying to call for my nine yr. old Skyy. I was trying to put my finger nails in his eyes but he kept turning his head and then looking back down at me, so mean like he hated me like he didn't wanna stop. He then let up & I gasped and ran down the stairs. He just kept wanting his phone.

On October 13, Williams was charged with domestic abuse assault, third offense, in violation of Iowa Code section 708.2A(4) (2003). The district court issued a protective order, which Raegen tried to cancel on two occasions.

The trial commenced on December 9. Prior to jury selection, an attorney representing Raegen informed the court and counsel that Raegen was willing to testify at trial, but that he expected her testimony would be contrary to the prior statements she made to the police officers incriminating Williams. The State then informed the court that it would not call Raegen as a witness.[1] The record further suggested that defense counsel knew prior to trial that Raegen planned to recant her prior statements to police.

At trial, the State presented its evidence through the tape of the 9–1–1 call and the police officers who were dispatched to the house. The officers testified to the statements made by Raegen and to their observations of her emotional state and the red mark on her neck. The 9–1–1 tape was played for the jury, and Raegen's handwritten statement to police was admitted into evidence. Counsel for Williams objected to the admission of the 9–1–1 tape, handwritten statement, and the testimony of the first police officer to testify. The objections were based on the rule against hearsay. The trial court overruled the objections.

At the close of the State's case, counsel for Williams moved for a judgment of acquittal:

Well, Your Honor, I think that the— the officers only know what happened secondhand by statements that Raegen said. They admitted that they don't—it is possible that she could have been telling them things that weren't true. The physical evidence is very suspect. They don't have any—any way of really knowing that that's what caused it. They assume it was caused by that because that's what she told them. I don't think that—I think that there is clearly reasonable doubt here and Mr. Williams is entitled to acquittal.

The trial court overruled the motion.

Williams called Raegen as a witness to testify in his defense. She testified that she called police on September 29 out of anger and jealously, and fabricated the

1. *See State v. Turecek*, 456 N.W.2d 219, 225 (Iowa 1990) ("The right given to the State to impeach its own witnesses under Iowa Rule of Evidence 607 and our decision in *State v. Trost*, 244 N.W.2d 556, 559–60 (Iowa 1976), is to be used as a shield and not as a sword.

The State is not entitled under rule 607 to place a witness on the stand who is expected to give unfavorable testimony and then, in the guise of impeachment, offer evidence which is otherwise inadmissible.").

story that Williams had choked her. She said Williams never choked her or put his hands on her neck. She said the only physical contact that took place was that she pushed him. She further testified the red mark on her neck must have come from her "picking at [her] face."

At the close of his evidence, Williams renewed his motion for judgment of acquittal, and he again renewed his motion at the end of the rebuttal evidence offered by the State. Williams never made any reference to a specific element of the crime in making his motions. The court denied both motions. The jury returned a verdict of guilty, and the district court sentenced Williams to a term of confinement not to exceed five years.

Williams appeals. He claims the district court erred in denying his motion for judgment of acquittal because there was insufficient evidence to convict him. He also claims his trial counsel was ineffective by failing to make a Confrontation Clause objection to the admission of Raegen's inculpatory hearsay statements through the tape of her 9–1–1 call and the testimony of Officers Frisch and Wheaton.

## II. Standards of Review

We review sufficiency-of-the-evidence claims for correction of errors at law. We uphold a verdict if substantial evidence supports it. "Evidence is substantial if it would convince a rational fact finder that the defendant is guilty beyond a reasonable doubt." Substantial evidence must do more than raise suspicion or speculation. We consider all record evidence not just the evidence supporting guilt when we make sufficiency-of-the-evidence determinations. However, in making such determinations, we also view the "evidence in the light most favorable to the State, including legitimate inferences and presump-

tions that may fairly and reasonably be deduced from the record evidence." *State v. Quinn,* 691 N.W.2d 403, 407 (Iowa 2005) (citations omitted). We review ineffective-assistance-of-counsel claims de novo. *State v. Begey,* 672 N.W.2d 747, 749 (Iowa 2003) (citing *Kane v. State,* 436 N.W.2d 624, 626 (Iowa 1989)).

## III. Sufficiency of the Evidence

The State contends Williams failed to preserve error on his sufficiency-of-the-evidence claim "because he did not make a specific motion for judgment of acquittal." In *State v. Crone,* we held that when the motion for judgment of acquittal did not make reference to the specific elements of the crime on which the evidence was claimed to be insufficient, it did not preserve the sufficiency of the evidence issue for review. 545 N.W.2d 267, 270 (Iowa 1996) (citing *State v. Geier,* 484 N.W.2d 167, 170–71 (Iowa 1992)); *accord State v. Greene,* 592 N.W.2d 24, 29 (Iowa 1999) (holding error not preserved on sufficiency of the evidence issue when "counsel made a general motion for judgment of acquittal, [but] failed to identify in the district court the specific elements of the charge that were insufficiently supported by the evidence" (citing *Crone,* 545 N.W.2d at 270); 75A Am.Jur.2d *Trial* § 1046, at 588 (1991) ("A motion for judgment of acquittal must fully set forth the grounds upon which it is based. Unless there is a total failure of proof, a motion to direct an acquittal must specify the particulars in which the evidence is insufficient."). The State is correct that Williams' motion did not reference any specific element of the crime charged. However, we recognize an exception to the general error-preservation rule when the record indicates that the grounds for a motion were obvious and understood by the trial court and counsel. *See In re Detention of Hodges,* 689 N.W.2d 467, 470 (Iowa 2004) ("An appellate court

will consider grounds not precisely raised in a motion for directed verdict where the record indicates the trial court, counsel, and both parties had no doubt what the grounds for the motion were and these grounds were obvious and discussed thoroughly in the court below.").

The elements of domestic abuse assault that the State was required to prove in this case were: (1) Williams committed "any act which is intended to cause pain or injury to, or which is intended to result in physical contact which will be insulting or offensive to another" or "any act which is intended to place another in fear of immediate physical contact which will be painful, injurious, insulting, or offensive," Iowa Code § 708.2A(1); *id.* § 708.1(1)-(2); and (2) Williams had "the apparent ability to execute the act," *id.* The parties stipulated that if an assault was established, it qualified as domestic abuse because Williams and Raegen were married, living together, and had children together. *See id.* § 236.2(2) (defining domestic abuse). Thus, the fighting issue throughout the trial was whether Williams choked Raegen or she falsely accused him of choking her. Under these circumstances, the record clearly reveals the trial court and counsel understood that the grounds for the motion for judgment of acquittal targeted the insufficiency of the evidence to support the first element of assault due to the limited physical evidence and the hearsay nature of the testimony. We conclude error was properly preserved.

■■■■ Evidence is sufficient to withstand a motion for judgment of acquittal when, viewing the evidence in the light most favorable to the State and drawing all reasonable inferences in the State's favor, "there is substantial evidence in the record to support a finding of the challenged element." *State v. Reynolds*, 670 N.W.2d 405, 409 (Iowa 2003). Substantial evidence means evidence that " 'could convince a rational fact finder that the defendant is guilty beyond a reasonable doubt.' " *Id.* at 410 (quoting *State v. Bayles*, 551 N.W.2d 600, 608 (Iowa 1996)). Moreover,

[t]he function of the court, on a motion to direct a verdict of acquittal, is limited to determining whether there is sufficient evidence from which reasonable persons could have found the defendant guilty as charged. It is not the province of the court, in determining the motion, to resolve conflicts in the evidence, to pass upon the credibility of witnesses, to determine the plausibility of explanations, or to weigh the evidence; such matters are for the jury.... *Any inconsistencies in the testimony of a defense witness are for the jury's consideration, and do not justify a court's usurpation of the factfinding function of the jury.*

75A Am.Jur.2d *Trial* § 1026, at 573–74 (emphasis added); *see also State v. Laffey*, 600 N.W.2d 57, 59 (Iowa 1999) ("[I]t is for the jury to judge the credibility of the witnesses and weigh the evidence." (Citation omitted.)).

■■■ Viewing the record in the light most favorable to the State, we conclude there was substantial evidence to support the conviction. Admissible hearsay can be used to support a conviction just as other admissible evidence. *See* Iowa R. Evid. 5.803(2) ("A statement relating to a startling event or condition made while the declarant was under the stress of excitement caused by the event or condition."). Additionally, the jury was free to sort out the inconsistency between Raegen's trial testimony and her prior statements to police. The red mark on Raegen's face constituted corroborative evidence.

## IV. Ineffective Assistance

■■■ "[T]o succeed on an ineffective-assistance-of-counsel claim, a defendant

must prove each of the following two elements by a preponderance of the evidence: (1) trial counsel failed to perform an essential duty, and (2) this failure resulted in prejudice." *State v. Dalton,* 674 N.W.2d 111, 119 (Iowa 2004) (citing *State v. Stallings,* 658 N.W.2d 106, 108–09 (Iowa 2003)). "To prove a breach of an essential duty, the [defendant] faces a strong presumption that the performance of counsel falls within a wide range of reasonable professional assistance." *Fullenwider v. State,* 674 N.W.2d 73, 75 (Iowa 2004) (citing *State v. Hepperle,* 530 N.W.2d 735, 739 (Iowa 1995)). The prejudice prong of the test "is shown if the [defendant] establishes a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 75–76 (citing *Strickland v. Washington,* 466 U.S. 668, 694, 104 S.Ct. 2052, 2068, 80 L.Ed.2d 674, 698 (1984)). If Williams fails to prove either prong of the *Strickland* test, his ineffective-assistance claim fails. *Dalton,* 674 N.W.2d at 119 (citing *State v. Cook,* 565 N.W.2d 611, 614 (Iowa 1997)).

█ Williams claims his trial counsel breached an essential duty by failing to object to Raegen's hearsay statements presented during the State's case on the grounds that they violated the Confrontation Clause of the Sixth Amendment to the United States Constitution. Williams relies on *Crawford v. Washington,* 541 U.S. 36, 124 S.Ct. 1354, 158 L.Ed.2d 177 (2004), for authority that the introduction of Raegen's hearsay statements by the State violated his Confrontation Clause rights. In *Crawford,* the Supreme Court overruled *Ohio v. Roberts,* 448 U.S. 56, 100 S.Ct. 2531, 65 L.Ed.2d 597 (1980), and held that when "testimonial" hearsay is at issue, "the Sixth Amendment demands what the common law required: unavailability and a prior opportunity for cross-examination." *Crawford,* 541 U.S. at 68, 124 S.Ct. at 1374, 158 L.Ed.2d at 203. Thus, out-of-court testimonial evidence is inadmissible unless the declarant is unavailable, and the accused had a prior opportunity for cross-examination. *Id.*

Although it is not clear that the Confrontation Clause rights of Williams were violated in this case under the standard announced in *Crawford,*[2] we conclude the decision cannot apply retroactively to support a claim for ineffective assistance of counsel. It was decided on March 8, 2004, four months after Williams' trial. Prior to *Crawford,* Raegen's hearsay statements were admissible under well-settled law. Under *Ohio v. Roberts,* hearsay statements did not violate the Confrontation Clause if: (1) the declarant was unavailable to testify at trial, and (2) the statement "b[ore] adequate indicia of reliability," which it did if it fell within a firmly rooted exception to the hearsay rule. 448 U.S. at 66, 100 S.Ct. at 2539, 65 L.Ed.2d at 608. In *United States v. Inadi,* 475 U.S. 387, 106 S.Ct. 1121, 89 L.Ed.2d 390 (1986), the Supreme Court limited its holding in *Roberts* and held that "unavailability analysis is a necessary part of the Confrontation Clause inquiry only when the challenged out-of-court statements were made in the course of a prior judicial proceed-

2. The State claims the statements in this case were not testimonial hearsay. *Crawford* only applies to "testimonial" hearsay statements. *Crawford,* 541 U.S. at 68, 124 S.Ct. at 1374, 158 L.Ed.2d at 203. The Supreme Court did not define "testimonial," but stated it applies "at a minimum to prior testimony at a preliminary hearing, before a grand jury, or at a formal trial; and to police interrogations." *Id.* The State also argues that the Confrontation Clause was satisfied when Williams called Raegen as a witness. Finally, it argues that if *Crawford* does apply to the facts of this case, an exception should be recognized in domestic violence cases. We need not and do not address any of these issues in this case.

ing." *Inadi,* 475 U.S. at 394, 106 S.Ct. at 1125, 89 L.Ed.2d at 398. In *White v. Illinois,* the Court relied on *Inadi* to hold that unavailability of the declarant is not required by the Confrontation Clause when the declarant's statement qualifies as an excited utterance. *White,* 502 U.S. 346, 355–56, 112 S.Ct. 736, 742–43, 116 L.Ed.2d 848, 859–60 (1992); *accord State v. Campbell,* 539 N.W.2d 491, 494–95 (Iowa Ct.App. 1995). Thus, because Raegen's statements qualified as excited utterances, a firmly rooted exception to the hearsay rule, their admission did not violate the Confrontation Clause.

In addressing ineffective-assistance-of-counsel claims, we have said that counsel is not under a duty of clairvoyance. *Morgan v. State,* 469 N.W.2d 419, 427 (Iowa 1991); *see State v. Liddell,* 672 N.W.2d 805, 814 (Iowa 2003) (" 'Counsel need not be a crystal gazer; it is not necessary to know what the law will become in the future to provide effective assistance of counsel.') " (quoting *Snethen v. State,* 308 N.W.2d 11, 16 (Iowa 1981)). Accordingly, Williams' trial counsel did not breach an essential duty by failing to object on Confrontation Clause grounds. Thus, the prejudice prong of the *Strickland* test need not be addressed, and Williams' ineffective-assistance-of-counsel claim fails. *Dalton,* 674 N.W.2d at 119 (citing *Cook,* 565 N.W.2d at 614)).

Having decided the ineffective-assistance-of-counsel claim on the grounds that counsel was not required to anticipate a change in the law, we decline to further address the application of the *Crawford* holding to the myriad questions presented by a recanting or nontestifying spouse in a domestic abuse case. We readily recognize that these issues are of great interest to judges and the bar, and answers are needed. However, we are constrained by our principles of self-restraint, including the longstanding rule that we will not decide constitutional questions when a case can be resolved on other grounds. *See, e.g., Dubuque & D.R. Co. v. Diehl,* 64 Iowa 635, 640, 21 N.W. 117, 120 (1884) ("We will not decide a constitutional question, unless it be necessarily involved in the case, which cannot be disposed of without the decision of such question. If the record shows other questions which are decisive of the case, they alone will be considered. Courts are slow in approaching, and hesitate to decide, constitutional questions."); *accord State v. Button,* 622 N.W.2d 480, 485 (Iowa 2001); *State v. Quintero,* 480 N.W.2d 50, 51 (Iowa 1992). Such judicial restraint is an essential component of our system of federalism and separation of powers. *See generally* 16 Am.Jur.2d *Constitutional Law* §§ 115–128 (1998); Lisa A. Kloppenberg, *Avoiding Constitutional Questions,* 35 B.C. L.Rev. 1003 (1994). Moreover, we recognize the law to be an evolving process that often makes the resolution of legal questions a composite of several cases, from which appellate courts can gain a better view of the puzzle before arranging all the pieces. The wisdom of this process has been revealed time and again, and we continue to subscribe to it today.

## V. Conclusion

We conclude there is substantial evidence from which a jury could have convicted Williams. Additionally, Williams' trial counsel did not breach an essential duty by failing to object to the admission of the hearsay statements on confrontation grounds. We affirm the judgment of the district court.

**AFFIRMED.**