# IN THE COURT OF APPEALS OF IOWA

No. 14-0888
Filed October 14, 2015

**STATE OF IOWA,**
    Plaintiff-Appellee,

**vs.**

**LONI HAYES NELSON,**
    Defendant-Appellant.

_____

Appeal from the Iowa District Court for Union County, John D. Lloyd, Judge.

The defendant appeals following his convictions of two counts of dependent adult abuse as an habitual felon. **AFFIRMED.**

Mark C. Smith, State Appellate Defender, and Theresa R. Wilson, Assistant Appellate Defender, for appellant.

Thomas J. Miller, Attorney General, Kevin Cmelik and Mary A. Triick, Assistant Attorneys General, and Timothy Kenyon, County Attorney, for appellee.

Considered by Mullins, P.J., Bower, J., and Sackett, S.J.*

*Senior judge assigned by order pursuant to Iowa Code section 602.9206 (2015).

**SACKETT, Senior Judge.**

Loni Nelson appeals following his convictions of two counts of dependent adult abuse as an habitual felon. He contends the State failed to establish the victim was a dependent adult or that he used improper means to influence the victim to loan him money. He also contends he received ineffective assistance from his trial counsel.

## I.     BACKGROUND FACTS AND PROCEEDINGS.

Nelson was hired to assist with Joan Boyd's around-the-clock care after her release from hospice in 2013. Boyd was in poor physical health and described herself as being bedridden for at least fifty-two years. Boyd could not be left alone in the home and needed to be turned every two hours. Theresa Harman, Boyd's daughter, lived with her and was her primary caretaker. Nelson was hired to assist Boyd on weekends, earning $300 per weekend in July and August 2013.

Charles Warren, who had power of attorney over Boyd's financial matters, discovered Boyd had written a number of checks to Nelson in August 2013 that did not appear to be for wages. The check numbers, dates, and amounts are as follows:

| | | |
|---|---|---|
| 5376 | August 3 | $1826.00 |
| 5380 | August 6 | $1268.71 |
| 5383 | August 8 | $ 575.00 |
| 5384 | August 7 | $1680.00 |
| 5388 | August 18 | $ 348.00 |

The checks numbered 5383, 5384, and 5388 appear to be signed by Nelson. In addition, $3400 in cash had been withdrawn from Boyd's IRA account. Bank

surveillance video showed Nelson was with Boyd when the withdrawal was made. When asked about the transaction, Boyd did not seem to be aware of it.

Warren contacted the police, who in turn contacted the Department of Human Services (DHS), who investigated. Nelson told the investigator the checks Boyd provided him represented advanced wages, a loan for car repairs and medication, and reimbursement for supplies he purchased. Nelson was unable to state how much money he had borrowed and there is no evidence he made any repayments on a loan.

The State charged Nelson with three counts of dependent adult abuse. Following a jury trial, he was found guilty as charged. The court granted Nelson's motion for new trial on one of the convictions, which was later dismissed. Nelson stipulated to his status as an habitual offender and was sentenced to a term of no more than fifteen years in prison on each conviction to be served consecutively.

## II. SUFFICIENCY OF THE EVIDENCE.

Nelson contends there is insufficient evidence to support his convictions of dependent adult abuse. Specifically, he claims there was insufficient evidence Boyd was a dependent adult. He also claims there is insufficient evidence he used improper means to influence Boyd to loan him money. We review these claims for correction of errors at law. *See State v. Williams*, 695 N.W.2d 23, 27 (Iowa 2005).

In reviewing the sufficiency of the evidence to withstand a motion for judgment of acquittal, we view the evidence in the light most favorable to the

State and draw all reasonable inferences in the State's favor. *Id.* at 28. There must be substantial evidence in the record to support each of the challenged elements of the crime. *Id.* Substantial evidence is that which "could convince a rational fact finder that the defendant is guilty beyond a reasonable doubt." *Id.* (internal quotation marks omitted).

> Iowa Code section 235B.2(4) defines a dependent adult as
>
> a person eighteen years of age or older who is unable to protect the person's own interests or unable to adequately perform or obtain services necessary to meet essential human needs, as a result of a physical or mental condition which requires assistance from another, or as defined by departmental rule.

Substantial evidence supports the finding that Boyd was a dependent adult. Her physical health necessitated around-the-clock care with another person in the home at all times. Boyd was not mobile and even required assistance to turn herself over in bed. She relied on assistance to meet all of her essential physical needs. Boyd was also suffering a decline in her mental capacities in August 2013. She did not recall withdrawing a substantial sum of money from her retirement account or her reason for doing so, and was unable to recall the names of her children when interviewed by the chief of police.

Substantial evidence also supports the finding that Nelson used improper means to influence Boyd to loan him money. Dependent adult abuse occurs when a person takes "unfair advantage of a dependent adult or the adult's physical or financial resources for one's own personal or pecuniary profit" without the dependent adult's informed consent. Iowa Code § 235B.2(5)(1)(c) (2013). Theft is one way of committing dependent adult abuse. *Id.* The statute also lists

5

"the use of undue influence, harassment, duress, deception, false representation, or false pretenses" as other means by which dependent adult abuse may occur. *Id.* Although Nelson claimed he had received money from Boyd as an advance or loan, the evidence contradicts his claim. It appears Nelson signed Boyd's name on three checks. Hartman testified Boyd loaned Nelson the money so he could have his vehicle repaired while waiting for his insurance to issue him a check for damages. Although Nelson was to repay Boyd when he received the insurance money, no loaned money was repaid. Nelson was also unable to provide an explanation regarding the purpose of the money he received from Boyd and was unclear as to the amount of money he was loaned. Nor is there paperwork to support his claim the money was loaned. In addition, Nelson suggested listing false reasons on the memorandum line of Boyd's checks in order to hide the true purpose of the expenditures.

Because there is sufficient evidence to support Nelson's convictions of dependent adult abuse, we affirm.

## III.    INEFFECTIVE ASSISTANCE OF COUNSEL.

Nelson also contends his trial counsel was ineffective in failing to object to the admission of certain evidence. First, he contends counsel failed to object to the admission of Boyd's statements as hearsay and a violation of the Confrontation Clause. He also contends counsel was ineffective by failing to object to testimony by a State witness regarding her personal business practices as a nurse's aide.

In order to succeed on a claim of ineffective assistance of counsel, Nelson must show his trial counsel failed to perform an essential duty and prejudice resulted. *See State v. Clay*, 824 N.W.2d 488, 495 (Iowa 2012). Both must be shown. *Id.* A breach of an essential duty occurs when counsel's performance is unreasonable under prevailing professional norms and the circumstances of the case. *Id.* In order to show prejudice, there must be a reasonable probability that but for counsel's error, the result of the proceeding would have been different. *Id.*

Nelson first contends his trial counsel was ineffective by failing to object to the following testimony at trial by the DHS investigator:

> Q. When you asked Ms. Boyd about the moneys and Loni, did she specifically recall that she had given money to Loni? A. Yes.
> Q. Did she want her money back? A. Yes.

He argues this evidence was inadmissible hearsay because it was an out-of-court statement made by Boyd, who was deceased at the time of trial, and was offered to show Boyd wanted her money back from Nelson. He also argues the statement violated his right to confront his accuser under both the federal and state constitutions.

The evidence regarding Boyd's wishes was used by Nelson's trial counsel as one of three pieces of evidence that Boyd gave the money to Nelson as a loan. During closing argument, Nelson's counsel stated:

> Now, the State wants you to believe there's no evidence of a loan. . . . There is evidence of a loan, three pieces of evidence of the loan. We have Mr. Nelson saying I received a loan. We have Theresa Hartman saying Mr. Nelson received a loan. Finally, Ms. King [sic] said I want my money back. That's suggestive of a loan.

> If you loan somebody money, you're going to want your money back. Again, just because there's no paperwork, just because there isn't a formal document that was signed doesn't mean a loan didn't happen. Loans happen all the time by verbal agreement. Hey, can I borrow $10, I'll pay you back.

Counsel's strategic decision to use this evidence as a justification for Nelson receiving the money was reasonable and does not amount to ineffective assistance. *See Fullenwide v. State*, 674 N.W.2d 73, 76 (Iowa 2004) ("We will not second-guess reasonable trial strategy.").

Nelson also contends he received ineffective assistance of trial counsel because his counsel failed to object to testimony given by Mary Swank, a CNA who provided in-home care for Boyd from September through December 2013. During her cross-examination, the prosecutor asked about the ethics of taking money directly from a client. Swank testified she tells her workers "not to take a blank check ever." She further testified that if a client needed an item purchased, her workers should use their own cash first and present the client with a receipt for the purchases made. When asked if she had a position regarding what she would have done if Nelson worked for her and there was an allegation about money being taken, she testified her "strict policy" is "do not take a patient's, client's money under any—for any reason" and Warren's decision to terminate Nelson would be consistent with her policy. Nelson alleges counsel should have objected to this testimony as irrelevant and unfairly prejudicial. *See* Iowa Rs. Evid. 5.401, 5.403.

Assuming trial counsel had a duty to object to Swank's testimony, Nelson has failed to prove he was prejudiced by this failure. Nelson argues the

testimony blurred "the lines between ethical standards and criminal culpability" and "unfairly tipped the balance of the evidence in favor of conviction." When measured against the evidence of Nelson's guilt, there is no reasonable probability the result would have been different had trial counsel lodged a successful objection to this evidence. Accordingly, we affirm.

**AFFIRMED.**