# IN THE COURT OF APPEALS OF IOWA

No. 16-0809
Filed June 7, 2017

**STATE OF IOWA,**
        Plaintiff-Appellee,

**vs.**

**CLARSELL ANTHONY TODD,**
        Defendant-Appellant.
_____

        Appeal from the Iowa District Court for Black Hawk County, Joseph M.

Moothart, District Associate Judge.


        The defendant appeals from his conviction for operating while intoxicated.

**AFFIRMED.**


        Kimberly A. Voss-Orr, Ames, for appellant.

        Thomas J. Miller, Attorney General, and Elisabeth Reynoldson, Assistant

Attorney General, for appellee.


        Considered by Potterfield, P.J., and Doyle and Tabor, JJ.

**POTTERFIELD, Presiding Judge.**

Clarsell Todd appeals from his conviction for operating while intoxicated (OWI), first offense. Todd maintains there is insufficient evidence to support the conviction, claiming the State did not present substantial evidence he was under the influence.

**I. Background Facts and Proceedings.**

Officer Justin Brandt testified the local dispatch received two calls from concerned citizens about the defendant and his vehicle. The first call was received at approximately 11:00 p.m., and the caller indicated there was a vehicle stopped on the street outside of his apartment building that was running and had been sitting there "over an hour." The second call took place at approximately 11:20 p.m., and the second caller reported a parked silver SUV outside of the same apartment building. The caller expressed concern about the driver, reporting, "It looks like someone is in there and they're not moving."

Officer Brandt arrived at the scene at approximately 11:35 p.m. When he arrived, he noticed the vehicle was stopped three to four feet from the curb, in front of the entrance of a driveway, and directly beside a "no parking" sign. He then approached the vehicle and looked inside, finding Todd with his chin resting on his chest and apparently sleeping. Todd did not respond when the officer shined his flashlight in the window and appeared to awake only after Officer Brandt knocked on the window. Todd rolled down the vehicle's window, and Officer Brandt saw Todd's eyes were bloodshot and watery. Additionally, Todd was slurring his speech and was "very thick tongued." When asked how long he had been stopped there, Todd told the officer "not too long" and later that he was

"just looking at a book." At another point, he indicated to the officer that he was sitting there waiting for someone to arrive.

The officer asked Todd to step out of the vehicle; as Officer Brandt patted him down to check for weapons, he noticed the odor of alcohol emanating from Todd's person. When asked, Todd reported he had not consumed any alcohol. Officer Brandt then conducted the horizontal gaze nystagmus (HGN) test. Of six possible clues, Todd's performance during the test provided two clues. At trial, both Officer Brandt and Officer Ryan Muhlenbruch—the second responding officer—testified that of the three standardized field sobriety tests, HGN is the most reliable and most objective. Further, it takes four clues to "fail" the test. Officer Muhlenbruch agreed that having only two clues "means you're probably under .08." After the HGN, Officer Brandt tried to administer the second field sobriety test, the walk-and-turn test. Officer Brandt attempted several times to get Todd in the correct starting position, standing with one foot directly in front of the other, but Todd was unable to maintain his balance in that position. Officer Brandt then asked Todd how long it had been since he last consumed alcohol, and Todd responded, "It's not that, it's my balance, my legs." Because of Todd's inability to maintain his balance during the walk-and-turn test, Officer Brandt did not administer the one-leg-stand test.

Officer Brandt then asked Todd to complete the preliminary breath test (PBT). Todd indicated he would not, claiming he had been sick and was taking medicine for his illness. The officers told Todd they believed he was intoxicated and that he could take the PBT to prove them wrong; Officer Brandt indicated he would drive Todd home if he took the PBT and "blew zeroes." Todd once again

refused.  Officer Brandt then placed Todd under arrest and placed him in the back of his squad car.

The jury was allowed to see the video of the encounter between Todd and the officers and then of Todd as he sat in the squad car while being transported to the local jail.  During the short ride, Todd appears to fall asleep in the back seat.

Once at the station, Officer Brandt asked Todd to complete the breath test using the DataMaster.  Todd was read the implied consent, which included the advisement that if he refused to submit to testing, he would lose his driving privileges for one year, as opposed to losing them for six months if he took the test and was found to have a blood-alcohol content of .08 or greater.  Todd refused to submit to testing.

The jury found Todd guilty of operating while intoxicated.  He was sentenced to 365 days of incarceration with all but fifteen suspended.

Todd appeals.

## II. Standard of Review.

We review challenges to the sufficiency of the evidence for correction of errors at law.  *State v. Hansen*, 750 N.W.2d 111, 112 (Iowa 2008).  In determining whether the district court erred, "[w]e consider all record evidence[,] not just the evidence supporting guilt."  *State v. Wiliams*, 695 N.W.2d 23, 27 (Iowa 2005).  However, we view the "evidence in the light most favorable to the State, including legitimate inferences and presumptions that may fairly and reasonably be deduced from the record evidence."  *Id.* (citation omitted).

**III. Discussion.**

Here, Todd maintains the State failed to provide sufficient evidence he was under the influence. In doing so, he urges us to find his explanation for his "symptoms" and reason for being found asleep in his car as more credible than that of the officers. Additionally, he relies on the fact that he "passed" the HGN, the most reliable of the standardized field sobriety tests.

First, we note that the while his performance on the HGN may tend to indicate that his blood-alcohol content was below .08, the State did not need to prove Todd's blood-alcohol content in order for the jury to properly convict him of operating while intoxicated. Rather, the State had to prove Todd was operating the vehicle while "under the influence."

The jury was instructed a person is "under the influence" when, by drinking liquor and/or beer, one or more of the following is true:

> 1. His reason or mental ability has been affected.
> 2. His judgment is impaired.
> . . . .[1]
> 4. He has, to any extent, lost control of bodily actions or
> motions.

While Todd maintained he had not consumed any alcohol on the night in question, both officers testified they could smell the odor of alcohol emanating from his person when they were near him. Additionally, Todd attempted to explain why he was stopped on the road for an extended period of time multiple ways, saying both that he had been reading a book and that he was waiting for

---

[1] In in its closing argument, the State conceded "that the [S]tate has not proved the defendant's emotions were visibly excited"—the third prong.

someone, but the officers did not locate a book in Todd's vehicle and no one approached the scene attempting to meet Todd during his encounter with the officers. Moreover, according to the timing of the first call, by the time Officer Brandt left the scene with Todd, Todd and his vehicle had been there for over two hours. Todd failed the walk-and-turn test, his speech was slurred, and according to the officers, his eyes were bloodshot and watery. When Todd was advised that the officers believed he was intoxicated but he could take the PBT and prove them wrong, Todd refused, claiming he had taken some over-the-counter medicine for a stomach issue he was having. Todd also refused to submit to testing on the DataMaster; the jury could consider his refusal to submit and the possible reasons for why he would refuse in reaching its verdict. *See State v. Massick*, 511 N.W.2d 384, 387 (Iowa 1994).

Viewing the evidence in the light most favorable to the State, the jury could conclude Todd had consumed alcohol on the night in question. Although Todd denied having consumed any alcohol in the video watched by the jury, the jury could find his statements less credible than that of the officers. *See State v. Laffey*, 600 N.W.2d 57, 60 (Iowa 1999) (stating witness credibility is for the jury to decide). This is especially true in light of other statements made by Todd to the officers that were called into question, such as that he had not been stopped long and that he had been reading a book. If the jury believed Todd meant to park where his vehicle was stopped—in the road, blocking a driveway, in front of a no-parking sign—it could find Todd's reason or mental ability had been affected or his judgment had been impaired. If the jury did not believe Todd purposely stopped his vehicle in that location, it could find he had lost control of his bodily

actions—passing out in a running vehicle on the street for more than an hour before an officer woke him up.  Either way, there is sufficient evidence to support Todd's conviction for OWI, and we affirm.

**AFFIRMED.**