# IN THE COURT OF APPEALS OF IOWA

No. 19-0680
Filed December 16, 2020

**STATE OF IOWA,**
        Plaintiff-Appellee,

**vs.**

**GERALD W. MILLER,**
        Defendant-Appellant.

_____

        Appeal from the Iowa District Court for Polk County, Heather Lauber, Judge.

        The defendant appeals from his convictions of sexual abuse in the second degree and assault with intent to commit sexual abuse causing bodily injury. **AFFIRMED.**

        Peter M. Sand, Des Moines, for appellant.

        Thomas J. Miller, Attorney General, and Zachary Miller, Assistant Attorney General, for appellee.

        Considered by Doyle, P.J., and Mullins and Greer, JJ.

**GREER, Judge.**

Gerald Miller was convicted of second-degree sexual abuse in violation of Iowa Code section 709.3(1)(a) (2018), and assault with intent to commit sexual abuse causing bodily injury in violation of section 709.11(2), following a jury trial in March 2019. The court sentenced Miller to consecutive prison terms, twenty-five years for the sexual-abuse charge and five years for the assault charge. On appeal, Miller contends (1) he did not receive a fair trial because of an improper jury pool, and he is owed a *Lilly* hearing[1]; (2) he cannot be convicted of committing sexual abuse because of a lack of a qualifying "sex act;" so his crime, if any, is attempted sexual abuse; (3) alternatively, if the State submitted sufficient evidence of a sex act, then the degree of abuse he can be convicted of is less than second degree—due to either a defect in the evidence or, if the subjective evidence was sufficient to establish guilt, then the standard of guilt is overly vague; and (4) even if sufficient evidence supports his conviction for second-degree sexual abuse, he should not have been given the maximum sentence.

**Facts and Earlier Proceedings.**

Miller admits he attacked S.S. during her work shift at a Des Moines QuikTrip, around 3:30 in the morning. S.S. was the only employee working at the store. Describing the attack, S.S. testified:

> [H]e came at me from the side. I . . . wasn't able to see him, and all of a sudden someone bangs into me on my right side. . . . He attempted to grope me. I shoved him away. Said, Hey, back off. And he came after me again.

---

[1] *State v. Lilly*, 930 N.W.2d 293 (Iowa 2019).

According to Miller, after spending the day drinking alcohol and smoking marijuana, he remembers being at the convenience store but claims to not remember the attack. Surveillance cameras at the QuikTrip captured audio and video footage of Miller in the store and the attack. First, the video stream shows Miller meandering around the store in no apparent distress. Then, after waiting for customers to leave, the video shows Miller grabbing S.S., forcing her to the ground, and ripping her pants and underwear down around her knees as she screamed and resisted. Miller demanded S.S. flip over or he would "beat her ass" and that it would be "over quick" if she complied. An enlarged photograph of a frame of the video footage captured Miller on top of S.S. with his hand between her legs while her pants and undergarments were down around her knees. S.S. testified Miller forced his hand into her vagina during the attack. S.S. believed the attack ended abruptly when she saw what she thought were car headlights shining through the door. Miller stood up, grabbed his glasses that had fallen off, and left the QuikTrip. Outdoor video footage shows him driving away in his vehicle.

After Miller left the QuikTrip, S.S. immediately called the police. The Des Moines Police Department commenced an investigation. The police published still images of Miller from the QuikTrip surveillance system. Family members alerted Miller that the police were looking for him, and he voluntarily went to speak with police investigators. In the interview with Detective Michael DeMoss, Miller eventually admitted he was at the QuikTrip the night of the attack, but he denied having any memory of attacking S.S.

Soon after, the State charged Miller with second-degree sexual abuse and assault with intent to commit sexual abuse causing bodily injury. A jury trial, which

included testimony by Miller, ensued. Before the jury selection, Miller orally objected to the jury panel on the basis it was not representative of the local African American community and would not be a jury of Miller's peers. After noting that Miller produced "no evidence in the record that the court could conclude that any underrepresentation of African Americans on this jury pool was due to a systematic exclusion," the district court denied the motion. After the State's case, Miller moved for judgment of acquittal on the charge of second-degree sexual abuse, citing the State's alleged failure to prove he committed a sex act. That motion was also denied. Ultimately, the jury found Miller guilty of both charges. After sentencing, Miller moved for a new trial, raising grounds of insufficient evidence of a sexual act, among other issues not part of this appeal. Miller also filed a motion in arrest of judgment but raised no specific sentencing issues. The district court denied the new trial motion, and Miller appealed.

**Analysis.**

*A. Fair Trial/Composition of Jury Pool.*

Miller contends he did not receive a fair trial given the composition of the jury pool. Under the Sixth Amendment to the United States Constitution, "The right to an impartial jury entitles the criminally accused to a jury drawn from a fair-cross-section of the community." *State v. Plain*, 898 N.W.2d 801, 821 (Iowa 2017) (citation omitted). To establish a prima facie violation of the fair cross-section requirement, the defendant must present sufficient evidence supporting a three part test:

> (1) that the group alleged to be excluded is a 'distinctive' group in the community; (2) that the representation of this group in venires from which juries are selected is not fair and reasonable in relation to the

number of such persons in the community; and (3) that this underrepresentation is due to systematic exclusion of the group in the jury-selection process.

*Duren v. Missouri*, 439 U.S. 357, 364 (1979). "We review constitutional issues de novo." *Plain*, 898 N.W.2d at 810.

Miller asserts the jury pool contained no African Americans.[2] Prior to jury selection, Miller objected to the makeup of the jury panel: "Looking through the venire that has been randomly selected for this trial, Judge, there are no Blacks on here period. Nowhere. I think there's one Hispanic, one Asian, one unknown, and we would object to this panel." The State resisted, arguing the defense failed to establish systematic exclusion of African Americans in the jury selection process, which is required in order to show a prime facie violation of the fair-cross-section requirement. *See Duren*, 439 U.S. at 364. In response, Miller argued

> There's no way for me to make a—prove up systematic exclusion. This is the panel that came out. The Iowa Supreme Court has recently expressed concern on more than one occasion with respect to the make-up of jury panels. And under *Batson*[3] we object to the venire that were looking at right now, Judge. This is not a cross section of the Polk County community by any stretch so we would object.

The State first urges that error was not preserved on this issue because Miller objected to the jury *panel* rather than the *pool*.[4] The record shows that Miller used

---

[2] While Miller's initial challenge was to the lack of Black potential jurors in the venire, he uses the term African-Americans throughout his appellate brief, so we do the same.

[3] *Batson v. Kentucky,* 476 U.S. 79, 87 (1986) (forbidding "[s]tates to strike [B]lack veniremen on the assumption that they will be biased in a particular case simply because the defendant is [B]lack").

[4] "The *Plain/Duren* right applies to the jury pool." *State v. Wilson*, 941 N.W.2d 579, 593 (Iowa 2020) (citing *Plain*, 898 N.W.2d at 822). "'[P]ool'" refers to the jurors summoned to the courthouse for a particular time period; 'panel' refers to the jurors

both "venire" and "panel" interchangeably in his objection. First he stated he was objecting to the panel, but after the State resisted, he said he was objecting to the venire. Despite the imprecise wording of the objection, it is clear that the district court ultimately addressed Miller's objection to the jury pool. In its ruling, the court stated:

> In this case there was a challenge made to the panel. But even assuming that that was extended to the jury pool, the court finds that based on the record presented that there is no evidence in the record that the court could conclude that any underrepresentation of African Americans on this jury pool was due to systematic exclusion. And as such, because the third prong is not met, the court does deny the motion to—or the challenge to the panel.

Because the court's ruling shows it considered Miller's objection to the jury pool, we find error was preserved. *See Meier v. Senecaut*, 641 N.W.2d 532, 540 (Iowa 2002).

With the issue preserved for appeal, the State contends Miller offered no evidence of systematic exclusion—the third element of the *Duren* test. 439 U.S. at 364. And the district court agreed. Miller complained he was never given the opportunity to make the "systematic exclusion" showing.

Between Miller's trial and this appeal, the Iowa Supreme Court clarified the second and third prongs of the fair-cross-section analysis in *Lilly*, 930 N.W.2d at 308. "For the second prong, the *Lilly* court determined a standard deviation analysis was the best of three suggested statistical methods to determine underrepresentation." *State v. Gibson*, No. 19-0779, 2020 WL 3569566, at *2

---

summoned to a particular courtroom to serve, potentially, on a jury for a specific trial." *Lilly*, 930 N.W.2d at 298 n.2.

(Iowa Ct. App. July 1, 2020) (citing *Lilly*, N.W.2d at 302). As to the third prong, the court said:

> Litigants alleging a violation of the fair cross section requirement would still have to demonstrate that the underrepresentation was the result of the court's failure to practice effective jury system management. This would almost always require expert testimony concerning the precise point of the juror summoning and qualification process in which members of distinctive groups were excluded from the jury pool and a plausible explanation how the operation of the jury system resulted in their exclusion. Mere speculation about the possible causes of underrepresentation will not substitute for a credible showing of evidence supporting these allegations.

*Lilly*, 930 N.W.2d at 308 (citing Paula Hannaford-Agor, *Systematic Negligence in Jury Operations: Why the Definition of Systematic Exclusion in Fair Cross Section Claims Must be Expanded*, 59 Drake L. Rev. 761, 790–91 (2011)).

On appeal, Miller addresses the second prong by applying the *Lilly* analysis. He asserts that "he faced a venire of [twenty-seven] persons, none of whom were African-American" and cites 2010 census figures for Polk County, Iowa. While Miller makes this claim in his appellate brief, these "facts" are not part of the record on appeal and, perhaps more significantly, they appear to be false. The district court's list of the "panel selection report" contains the names of forty-five individuals who were sent as panel members to the courtroom.[5] We have no information regarding the pool of jurors. But the venire, which is another name for the pool, could not be smaller than the panel sent to the courtroom. *See Plain*, 898 N.W.2d at 821 n.5 (noting a jury pool is also known as a venire). As we pointed out above, "The *Plain/Duren* right applies to the jury *pool*." *Wilson*, 941 N.W.2d at

---

[5] This list is devoid of information regarding race or ethnicity of these prospective jurors.

593 (emphasis added). Failure to make a record as to the racial makeup of the jurors in the entire juror pool that day is a sufficient, proper reason for denying Miller's fair cross-section claim. *See id.* (noting that while the defendant made a record as the ethnic and racial makeup of the 100 potential jurors assigned for his trial, he failed to make a record as the jury pool, so denial was proper).

As for the third prong, Miller argues he had no opportunity to inquire about systematic exclusion at trial, and with the recent supreme court guidance, he should be afforded the opportunity on remand to develop his arguments that his right to an impartial jury was violated. Guided by the trilogy of *Lilly*, *State v. Veal* and *State v. Williams*,[6] we consider Miller's request for a hearing on remand to allow the district court to weigh in on the alleged violation of a right to a fair trial. In all three of these cases, remand was granted so, with the benefit of the case law, the defendant could develop a fair-cross-section claim. But in each of those cases and under the guidance of *Plain*, the defendant provided the district court extensive detail of the census count for the county, the tallies of jurors self-identifying as African-American in pools over several months or years, and specific detail about the potential juror pool available from whom to select jurors in each respective trial. Here, Miller failed to establish a prima facie showing on the lack of fair representation in the jury pool and on any systematic exclusion. And his failure to develop his claim was not due to inability to access information about the jury pool on the day of his trial, *see Plain*, 898 N.W.2d at 828, or unanswered

---

[6] On the same day, the Supreme Court decided these three cases to clarify the process to challenge a fair-cross-section claim. *See Lilly*, 930 N.W.2d at 308, *State v. Veal*, 930 N.W.2d 319, 328–30 (Iowa 2019) and *State v. Williams*, 929 N.W.2d 621, 629–30 (Iowa 2019).

questions regarding how to prove systematic exclusion, *see Lilly*, 930 N.W.2d at 307–08. Miller simply failed to make anything but the most generic claim without attempting to create the necessary record to support it. His lack of a serious attempt to develop his claim below cannot be rewarded with another bite at the apple. We have no choice but to deny Miller's invitation to remand for a *Lilly* hearing.

### B. Sufficiency of the Evidence.

We review sufficiency of evidence claims for errors at law. *State v. Sanford*, 814 N.W.2d 611, 615 (Iowa 2012). "In reviewing challenges to the sufficiency of evidence supporting a guilty verdict, courts consider all of the record evidence viewed 'in the light most favorable to the State, including all reasonable inferences that may be fairly drawn from the evidence.'" *Id.* (quoting *State v. Keopasaeuth*, 645 N.W.2d 637, 640 (Iowa 2002)). "[W]e will uphold a verdict if substantial record evidence supports it." *State v. Nichter*, 720 N.W.2d 547, 556 (Iowa 2006) (alteration in original) (citation omitted). "Evidence is substantial if it would convince a rational fact finder that the defendant is guilty beyond a reasonable doubt." *State v. Williams*, 695 N.W.2d 23, 27 (Iowa 2005). "Inherent in our standard of review of jury verdicts in criminal cases is the recognition that the jury [is] free to reject certain evidence, and credit other evidence." *Nichter*, 720 N.W.2d at 556 (citation omitted).

### 1. Evidence of a "sex act."

Miller disputes his conviction for sexual abuse in the second degree. The State concedes that Miller preserved error on this claim when he moved for judgment of acquittal on this basis. To establish Miller's guilt under Iowa Code

section 709.3(1)(a), the State had to prove that, "[d]uring the commission of sexual abuse[7] the person displays in a threatening manner a dangerous weapon, or uses or threatens to use force creating a substantial risk of death or serious injury to any person." Miller argues he cannot be convicted of sexual abuse in the second degree if the State failed to prove he committed a "sex act." The jury was instructed that a "sex act" was any sexual contact:

> 1. By penetration of the penis into the vagina or anus.
> 2. Between the mouth of one person and the genitals of another.
> 3. Between the genitals of one person and the genitals or anus of another.
> 4. Between the finger or hand of one person and the genitals or anus of another person.
> 5. By a person's use of an artificial sex organ or a substitute for a sexual organ in contact with the genitals or anus of another.

Yet even with the testimony of S.S., along with the video and photographic evidence, Miller "asserts that there is a lack of sufficient evidence of contact between his hand or finger(s) and the victim's vagina to sustain his conviction under [section] 709.3." Instead, Miller characterizes the video evidence as discrediting S.S.'s testimony that he put his entire hand inside her vagina. He admits he "came close . . . in what he did to S.S.," but claims that the video of the attack and still photograph from the video "just isn't evidence of reasonable certainty . . . ." The video shows Miller forcing S.S. to the ground and violently

---

[7] Sexual abuse is defined as any sex act

> done by force or against the will of the other. If the consent or acquiescence of the other is procured by threats of violence toward any person or if the act is done while the other is under the influence of a drug inducing sleep or is otherwise in a state of unconsciousness, the act is done against the will of the other.

Iowa Code § 709.1(1).

pulling her pants and underwear down around her knees. The still image shows Miller's hand buried between the legs of S.S.

The testimony of S.S., the photograph, and the video footage is overwhelming evidence showing Miller committing a sex act. *See State v. Hildreth*, 582 N.W.2d 167, 170 (Iowa 1998) ("We find that the alleged victim's testimony is by itself sufficient to constitute substantial evidence of defendant's guilt."). A reasonable juror could conclude that, even if contact was not exactly as S.S. testified, Miller's hand contacted her vagina. When considering all the evidence in the light most favorable to the State, we find substantial evidence that Miller committed a sex act upon S.S.

2. *Other claims not preserved for appeal.*

On appeal, Miller argues the State failed to produce sufficient evidence that during the commission of sexual abuse, Miller used or threatened "to use force creating a substantial risk of death or serious injury to any person." Iowa Code § 709.3(1). He also argues that section 709.3(1) is constitutionally vague and that there was no proof of serious injury. But, as to these other claims, we agree with the State that error was not preserved. *See State v. Albright*, 925 N.W.2d 144, 150 (Iowa 2019) ("Counsel does not preserve error on a sufficiency-of-evidence issue when counsel makes a general motion for judgment of acquittal but fails to identify specific elements of the charge not supported by the evidence."). Miller never argued there was insufficient evidence of use or threatened use of force when he moved for acquittal. Likewise, Miller made no argument before the district court related to the serious injury complaint. Similarly, Miller's constitutional

claims[8] were not preserved because he raises these claims for the first time on appeal. "It is a fundamental doctrine of appellate review that issues must ordinarily be both raised and decided by the district court before we will decide them on appeal." *Meier*, 641 N.W.2d at 537. Thus, we do not address these issues on appeal.

### C. Sentencing.

Miller does not allege his sentence was illegal. Instead, he argues that rather than imposing consecutive terms of imprisonment, a more compassionate punishment would be a lesser term or the option of allowing the terms to run concurrently. He simply contends his sentence fell "at the worst end of the spectrum." If the sentence imposed is within the statutory limits, it "is cloaked with a strong presumption in its favor, and will only be overturned for an abuse of discretion or the consideration of inappropriate matters." *State v. Formaro*, 638 N.W.2d 720, 724 (Iowa 2002). Because Miller does not claim the court lacked statutory authority to order consecutive sentences, *see* Iowa Code § 901.8, or that the district court failed to adequately state its reasons for doing so, *see State v. Hill*, 878 N.W.2d 269, 273 (Iowa 2016), we find no abuse of discretion. We affirm the consecutive sentences.

### Conclusion.

Miller failed to provide an adequate basis to challenge whether the jury pool represented a fair cross-section of persons in the community. As such, we decline

---

[8] Miller argues the "disabling mental illness" standard in Iowa Code section 702.18(1)(a) is unconstitutionally vague as applied in this case, and that "it creates indistinguishable overlap between all degrees of sexual abuse."

to grant Miller a hearing under *Lilly.* Substantial evidence established Miller's commission of sexual abuse in the second degree, so we affirm his conviction. The district court did not abuse its discretion with the sentence imposed. For the reasons provided, we affirm Miller's convictions and sentences.

**AFFIRMED.**