# IN THE COURT OF APPEALS OF IOWA

No. 22-0572
Filed June 7, 2023


**STATE OF IOWA,**
        Plaintiff-Appellee,

**vs.**

**VINCENT SALVATORY BROCATO,**
        Defendant-Appellant.
_____

Appeal from the Iowa District Court for Scott County, Patrick A. McElyea,
Judge.


Vincent Brocato appeals his convictions for attempted murder and domestic
abuse assault while using a dangerous weapon. **AFFIRMED.**


Martha J. Lucey, State Appellate Defender, and Shellie L. Knipfer, Assistant
Appellate Defender, for appellant.

Brenna Bird, Attorney General, and Thomas E. Bakke, Assistant Attorney
General, for appellee.


Considered by Ahlers, P.J., Badding, J., and Vogel, S.J.*

*Senior judge assigned by order pursuant to Iowa Code section 602.9206
(2023).

**AHLERS, Presiding Judge.**

A jury convicted Vincent Brocato of attempted murder and domestic abuse assault while using a dangerous weapon for the shooting of Erica.[1] Erica had been staying with Brocato, and the two had a sexual relationship. Their relationship eventually soured, and Erica was in the process of moving out on the night of the shooting.

On appeal, Brocato challenges his convictions by claiming the State failed to establish sufficient evidence identifying him as the shooter. We review challenges to the sufficiency of the evidence for corrections of errors at law. *State v. Hall*, 969 N.W.2d 299, 304 (Iowa 2022). Evidence is sufficient if there is substantial evidence in the record to support the conviction. *Id.* Evidence is substantial if it is sufficient to convince a rational trier of fact that the defendant is guilty beyond a reasonable doubt. *Id.* In assessing the sufficiency of the evidence, we view it in the light most favorable to the State. *Id.*

Key to Brocato's appellate argument is his suggestion that we should independently weigh the evidence and make our own credibility determinations to tip the scales in his favor. But that is not our role on appellate review. "Appellate review of the jury's verdict is not the trial redux." *State v. Mathis*, 971 N.W.2d 514, 519 (Iowa 2022). "It is not the province of the court . . . to resolve conflicts in the evidence, to pass upon the credibility of witnesses, to determine the plausibility of explanations, or to weigh the evidence; such matters are for the jury." *State v.*

---

[1] The shooting victim's name is not Erica. To protect the privacy of the victim, we used a random-name generator, which yielded the name Erica that we will use to refer to the victim throughout this opinion.

*Musser*, 721 N.W.2d 758, 761 (Iowa 2006) (quoting *State v. Williams*, 695 N.W.2d 23, 28 (Iowa 2005)).

Our review of the record evidence, in the light most favorable to the jury verdict, reveals the following facts.[2] Text messages between Brocato and a friend exchanged a little over two weeks prior to the shooting establish Brocato was angry with Erica. One text message stated, "That bitch made a fool out of me and took a lot of my shit." Brocato's text messages continued. He told his friend, "I need a pistol." He reassured his friend, "If you don't want to get involved I understand but I also know that that's your friend but everybody needs to understand I'll fucking smoke that bitch I'll cut that bitch to fucking pieces." The friend did not provide Brocato with a gun at that time.

On the night of the shooting, however, Brocato's friend brought Brocato a handgun because Brocato told him he needed it to scare away a man who had been bothering an ex-girlfriend. The friend visited with Brocato for about an hour and then left, leaving the gun with Brocato. Later testing revealed that the gun was used to shoot Erica in the head.

After receiving the handgun, Brocato received a text message informing him that Erica was at Brocato's upstairs neighbor's apartment. Brocato went to the neighbor's apartment, talked to Erica, and the two went downstairs. About ten minutes later, Brocato returned to the neighbor's apartment alone, and Brocato was agitated. After Brocato left the upstairs neighbor's apartment, the friend who had brought Brocato the gun returned to Brocato's apartment. He found Brocato

---

[2] Erica did not testify because her head and brain injuries from the shooting prevented her from being able to communicate enough to testify.

waiting for him outside to return the gun to him. At the same time, Brocato also gave him Erica's cell phone, which the friend then sold at a kiosk.

Brocato went to speak to police the night of the shooting and, while crying, told them they were going to take him into custody because he thought he did something. Officers went to his apartment to investigate but left when no one answered the door. Brocato eventually went with police to his apartment and unlocked it for them. Once inside the apartment's entryway, Brocato quickly told an officer to "look" and pointed toward another room where police would find Erica suffering from a gunshot wound to the head.

A few days after the shooting, Brocato was in jail and spoke to his mother on the jail telephone. The conversation was recorded. During the phone call, Brocato informed his mother that he was the only one in the apartment with Erica.

Viewing this evidence in the light most favorable to the verdict, it is sufficient for a jury to identify Brocato as Erica's assailant. Brocato was angry with Erica for several reasons as expressed in his text messages—explaining Brocato's motive to harm Erica. *See State v. Richards*, 809 N.W.2d 80, 94 (Iowa 2012) (recognizing a person's motive to commit an offense is probative to identity). He had access to the handgun used to shoot Erica, which he got rid of shortly after the shooting by returning it to his friend. He steered the friend away from entering his apartment and finding an injured Erica by meeting him outside in the frigid February weather[3] instead of inviting him inside or meeting him at the door. He gave Erica's phone away to the friend, possibly in an effort to manipulate Erica's digital footprint and

---

[3] The evidence was consistent that it was a very cold day, with one witness testifying that it was thirty degrees below zero.

timeline to make it appear she left his apartment at that point. His conduct while interacting with police incriminated him as well. As he cried, he told officers he thought he did something bad. Then, he indicated to officers that he knew Erica was injured by pointing into the apartment and saying "look" in an emotional tone before Erica was even visible from his vantage point. A reasonable jury could conclude that Brocato would not have known about Erica in the other room at that point unless he was the one who shot her. And, finally, he admitted to his mother that he was the only one in the apartment with Erica.

The pieces of this puzzle fit together such that a reasonable jury could conclude that Brocato felt slighted and disrespected by Erica, so he got a gun, shot her, and then feigned surprise and horror at the discovery of her injuries in an attempt to convince officers he was not her assailant. The State provided the jury with substantial evidence to piece the puzzle together to conclude Brocato was the shooter and reject Brocato's claim that he was not. So, Brocato's convictions are supported by substantial evidence, and we affirm.

**AFFIRMED.**