# IN THE COURT OF APPEALS OF IOWA

No. 22-0643
Filed October 11, 2023

**STATE OF IOWA,**
        Plaintiff-Appellee,

**vs.**

**NIBITANGA SALVATOR,**
        Defendant-Appellant.
_____

        Appeal from the Iowa District Court for Scott County, John Telleen, Judge.


        A defendant challenges the sufficiency of the evidence supporting his conviction.  **AFFIRMED.**


        Martha J. Lucey, State Appellate Defender, and Theresa R. Wilson, Assistant Appellate Defender, for appellant.

        Brenna Bird, Attorney General, and Olivia D. Brooks, Assistant Attorney General, for appellee.


        Considered by Ahlers, P.J., Badding, J., and Vogel, S.J.*

        *Senior judge assigned by order pursuant to Iowa Code section 602.9206 (2023).

**AHLERS, Presiding Judge.**

Two men robbed a pizza-delivery driver at gunpoint and fled the scene. Investigators eventually identified Nibitanga Salvator as one of the suspected robbers. The State charged Salvator with two crimes. Count I charged him with first-degree robbery, and count II charged him with felon in possession of a firearm. A jury ultimately found Salvator guilty of second-degree robbery, a lesser included offense of count I, and acquitted him on count II. Salvator appeals. He challenges the sufficiency of the evidence identifying him as one of the robbers.

We review challenges to the sufficiency of the evidence for corrections of errors at law. *State v. Hall*, 969 N.W.2d 299, 304 (Iowa 2022). Evidence is sufficient if there is substantial evidence in the record to support the conviction. *Id.* Evidence is substantial if it is sufficient to convince a rational trier of fact that the defendant is guilty beyond a reasonable doubt. *Id.* In assessing the sufficiency of the evidence, we view it in the light most favorable to the State. *Id.*

Central to Salvator's argument is his claim that certain evidence, namely a witness identification and DNA evidence, was so unreliable that it cannot be considered to implicate him. But "[i]t is not the province of the court . . . to resolve conflicts in the evidence, to pass upon the credibility of witnesses, to determine the plausibility of explanations, or to weigh the evidence; [instead,] such matters are for the jury." *State v. Musser*, 721 N.W.2d 758, 761 (Iowa 2006) (quoting *State v. Williams*, 695 N.W.2d 23, 28 (Iowa 2005)). Contrary to Salvator's argument, "[a]ppellate review of the jury's verdict is not the trial redux." *State v. Mathis*, 971 N.W.2d 514, 519 (Iowa 2022). And Salvator raises no challenge to the admissibility of the witness-identification or the DNA evidence—only challenges to

the credibility of the evidence.  We understand Salvator's complaints about the procedure used in the witness-identification process.  He even presented an expert witness to explain the flaws in that process.  Likewise, Salvator presented expert testimony about the DNA testing process, potential for contamination during testing, potential for transfer DNA, and limitations of information that may be gleaned from DNA results.[1]  But the jury considered all the evidence, including that of his experts, and ultimately found the evidence established his participation in the robbery.  It is not for this court to reweigh the evidence, make our own credibility determinations, and reach our own verdict.

Our review of the evidence, in the light most favorable to the jury verdict, reveals the following facts.  On the day of the robbery, Vickie[2] met up with a friend and his friend and allowed them to use her car.  Vickie's friend drove the car, with Vickie and the friend's friend in the car as passengers.  Vickie asked her friend to let her drive because she wanted to leave, but her friend refused.  Later, the trio picked up two men that Vickie had not met before.  They parked, and the two men exited the car, walked into an alley, and went around a corner.

Meanwhile, a pizza-delivery driver was delivering an order.  It was dark out, and the delivery driver noticed two men walking through a nearby alley.  He noticed the men again when he walked back to his car after making his delivery.  He got in his car and went to lock the door, but before he could, the men banged on his

---

[1] Notably, Salvator's expert did not challenge the actual DNA typing results as inaccurate.

[2] This person's name is not Vickie.  To maintain confidentiality, we have used a random-name generator to replace the person's real name with the fictitious name Vickie.

window and opened the car door. They pushed him back into the car "with guns in [his] chest" and demanded money. He gave them his work wallet, his personal wallet, and the credit card receipts from his deliveries that night. The men ran away. The delivery driver called police to report the incident, describing the assailants by race, height, and clothing color.

Vickie, her friend, and his friend waited at Vickie's car for the two men who exited the car to return. The two men came running back "super fast," and each got in either side of the back seat, resulting in Vickie sitting in between them. Vickie noticed the man to her right had a wallet in his hand when they returned. They drove away.

Police officers, responding to the delivery driver's call, canvased the area around the robbery. One officer noted a vehicle occupied by people matching the description of the assailants. It was Vickie's vehicle being driven by her friend. The officer followed the vehicle for a short time before turning on flashing lights to initiate a traffic stop. The driver did not stop and led the officer on a chase. The chase ended when the officer rammed the fleeing car with his car, causing the fleeing car to spin to a stop. The front passenger and the men on either side of Vickie fled the scene, leaving Vickie and her friend. An officer canvassing the surrounding area looking for the three people who fled found one man hiding under a car. A search of his person revealed credit card receipts from the pizza business for which the robbery victim worked. Vickie later identified him as one of the two men they picked up that night.

Eventually, the contents of Vickie's car were inventoried, and some items were selected for forensic testing, including a partially empty cigarette pack found

toward the right side of the back seat. Neither Vickie, her friend, nor the friend's friend are cigarette smokers. DNA testing revealed two contributors on the cigarette pack. The DNA of the major contributor from the pack matched Salvator's DNA.

Investigators also set up a printed photo lineup of six men to show Vickie. She identified Salvator as the other man who was in the back seat with her. Later, she clarified he sat to the right of her, and she also identified the front passenger from the six-man photo lineup.[3]

This is sufficient evidence to establish Salvator's identity as one of the robbers. The timing of the robbery lined up with the time the two men left Vickie's car for a period of time before returning with a wallet. One of the men was discovered with the credit card receipts taken from the delivery driver. These facts support a finding that the two men that Vickie's friend picked up that night were the robbers. And the evidence supported a finding that Salvator was one of those two men. Vickie identified him as such. Testing revealed Salvator's DNA on the cigarette pack found on the same side of the back seat where he sat. None of the original three occupants of the car smoked, permitting a fact finder to conclude it came from the two men picked up that night. The evidence places Salvator in the car that night and identifies him as one of the two men who carried out the robbery of the pizza-delivery driver. Finding the evidence sufficient to permit a jury to identify Salvator as one of the robbers, we affirm.

**AFFIRMED.**

---

[3] Vickie also noted she knew two of the other men, but she stated they were not involved.