# IN THE COURT OF APPEALS OF IOWA

No. 16-0360
Filed July 6, 2017

**STATE OF IOWA,**
　　　　Plaintiff-Appellee,

**vs.**

**GARY MICHAEL FORTUNE,**
　　　　Defendant-Appellant.
_____

　　　　Appeal from the Iowa District Court for Scott County, Paul L. Macek, Judge.

　　　　The defendant appeals his convictions for murder in the first degree, attempted murder, burglary in the first degree, and arson in the first degree. **AFFIRMED.**

　　　　Mark C. Smith, State Appellate Defender, and Robert P. Ranschau, Assistant Appellate Defender, for appellant.

　　　　Thomas J. Miller, Attorney General, and Linda J. Hines, Assistant Attorney General, for appellee.

　　　　Heard by Vogel, P.J., and Doyle and McDonald, JJ.

**MCDONALD, Judge.**

Gary Fortune killed Betty Simmons and attempted to kill Jack Simmons. Following a jury trial, Fortune was convicted of murder in the first degree, attempted murder, burglary in the first degree, and arson in the first degree. That is the tale.

This is the detail. On a September evening in 2014, Fortune and his on-again, off-again paramour Annette Aviles were at the apartment of Aviles's mother and step-father, Betty and Jack Simmons. Fortune and Betty were playing cards. At approximately 9:00 p.m., Fortune and Aviles argued over Aviles's constant use of her cellular phone. Fortune became so upset during the argument he threw his cards in Aviles's face. Betty became upset, and she and Fortune started to argue. They both drew knives—Betty, a butcher knife from her kitchen; Fortune, a Gerber knife he carried on his person. Aviles called 911. Jack intervened and de-escalated the situation. Fortune left the apartment.

The police responded to Aviles's call and arrived at the apartment at 9:31 p.m. By the time the police arrived at the apartment, Aviles had already called a friend, arranged for a ride, and left the apartment. The police investigated the call for only a brief period of time. Although Fortune had left the apartment, he remained in the vicinity and watched the police arrive and leave. After the police left, Fortune returned to the apartment. Fortune testified he returned to the apartment to retrieve his cellular phone and knife and to "confront" Aviles. However, Fortune did not go to the front door. Instead, he clambered up the fire escape and entered the apartment through a bathroom window. What happened next was disputed at trial.

Fortune testified his recollection of events was impaired because of his voluntary ingestion of Xanax and alcohol. He testified his memory was limited to "snapshots" of events from the evening in question. Fortune testified he entered the apartment though the bathroom window. He waited in the bathroom to confront Aviles. He heard Jack and Betty arguing. He then fell asleep in the bathtub only to awake to the sound of Betty screaming. Fortune testified he exited the bathroom to investigate the scream and saw Jack stabbing Betty. Fortune grabbed the knife from Jack, and the two men began to struggle. Eventually, Jack broke free and went into the bathroom. Fortune testified he could not remember exactly what happened next. He "remember[ed] that there was a fire that was started." He testified he remembered trying to smother the fire. He remembered removing his shirt while still inside the apartment. He also remembered getting in his vehicle and starting the car.

Jack Simmons testified he had fallen asleep in his bedroom after the police left the scene. He testified he awoke when he heard his wife calling his name. As Jack was waking up, he saw Fortune walk past his bedroom door. Jack went into the living room and observed Fortune stabbing Betty. Jack returned to his bedroom to find something to defend against Fortune. Before Jack found anything, Fortune was on top of Jack, stabbing him. Jack testified Fortune said, "It's your time to die." The men struggled and fought in the bedroom until Jack managed to break away. Jack went to the bathroom and barricaded the door, using his body weight to prevent Fortune from opening the door. Fortune then set fire to an umbrella outside the bathroom door in an apparent attempt to smoke Jack out of the bathroom. Jack escaped out the

bathroom window and down the fire escape. He sought help from another resident in the apartment. The apartment resident called 911. Paramedics and police responded quickly to the scene. Fortune had already left the apartment by the time the first-responders arrived. Betty had died from stab wounds to her chest. Jack suffered from multiple stab wounds and was taken to the hospital for treatment.

After Fortune left the apartment, he went to the house of a former paramour, Ikponwonsa Oriaikhi. He also went to his former place of employment, broke in, made a phone call, and subsequently left a note apologizing for the damage. He drove to a farmhouse and attempted suicide twice. He wrote notes to three people—Oriaikhi, Aviles, and his mother. In the note to Oriaikhi, Fortune wrote, "Don't know what came over me but I'm past redemption. Never should've gotten involved with crazy." In his note to Aviles, Fortune wrote, "Sorry for everything but you pushed me to [sic] far. Wish I had never met you but I did. . . . Don't push a motherfucker to the edge and laugh about it. Wish it could've been different." To his mother he wrote, "I will see you soon. Don't try to understand this, cremate me and scatter me, no marker, no stone." He was found and arrested at a bar in the town near the farmhouse.

Fortune was charged with first-degree murder, attempted murder, first-degree burglary, and first-degree arson. During the course of proceedings, he filed a motion to suppress statements he made to officers while in custody on the ground his intoxication precluded a knowing waiver of his *Miranda* rights. The motion to suppress was denied. The jury found Fortune guilty as charged, and the district court entered judgment. Fortune timely filed this appeal.

5

I.

A.

In his first claim of error, Fortune argues the district court abused its discretion in excluding certain impeachment evidence. Specifically, Fortune contends he should have been allowed to impeach Jack Simmons with evidence of Jack's 1981 conviction for robbery. Evidentiary rulings are reviewed for an abuse of discretion. *See State v. Harrington*, 800 N.W.2d 46, 48 (Iowa 2011). "A court abuses its discretion when its discretion is based upon erroneous application of the law or not supported by substantial evidence." *Id.*

As a general rule, convictions involving "dishonesty or false statement" "shall be admitted" to attack a witness's credibility. Iowa R. Evid. 5.609(a)(2). Robbery is considered a crime of "dishonesty or false statement" within the meaning of the rule. *See State v. Latham*, 366 N.W.2d 181, 184 (Iowa 1985). However,

> [e]vidence of a conviction under this rule is not admissible if a period of more than ten years has elapsed since the date of the conviction or of the release of the witness from the confinement imposed for that conviction, whichever is the later date, unless the court determines, in the interests of justice, that the probative value of the conviction supported by specific facts and circumstances substantially outweighs its prejudicial effect.

Iowa R. Evid. 5.609(b). This rule, "in effect, creates a rebuttable presumption that convictions over ten years old are more prejudicial than probative and are therefore inadmissible." *State v. Roby*, 495 N.W.2d 773, 775 (Iowa Ct. App. 1992). The party seeking to introduce the impeachment evidence has the burden to show the evidence's probative value outweighs its prejudicial effect. *See State v. Roth*, 403 N.W.2d 762, 767 (Iowa 1987). In making its

determination, the trial court should consider "such factors as (a) the nature of the conviction, (b) its bearing on veracity, (c) its age, and (d) its propensity to improperly influence the minds of the jurors." *State v. Hackney*, 397 N.W.2d 723, 726 (Iowa 1986).

In this case, the district court disallowed the evidence, stating, "A crime that occurred in 1981 is not going to be admitted into the evidence of this case." Fortune contends this was error because the district court did not make a record regarding each of the *Hackney* factors. We disagree. The factors are to provide guidance to the district court in making its evidentiary ruling and to provide guidance to the appellate courts in reviewing the evidentiary ruling. *Hackney* does not stand for the proposition the rule requires on-the-record findings regarding each factor. *See id.* at 728 ("In the present appeal, however, we need not decide whether [rule 5.609(b)] requires on-the-record findings."). Indeed, during the course of trial, such on-the-record findings might be impracticable. In reviewing the relevant factors, we conclude Fortune failed to demonstrate this should be one of the "very rare[] and . . . exceptional" convictions outside the ten-year period that should be admissible for impeachment purposes. *See id.* at 729. The district court did not abuse its discretion in excluding the proffered evidence.

## B.

In his next claim of error, Fortune contends his trial counsel was ineffective in failing to advance additional grounds for acquittal. Fortune's specific claim is his trial counsel should have moved for judgment of acquittal with respect to the burglary charge on the ground Fortune lacked the intent to commit an assault upon entering the apartment. By way of background, the

marshalling instruction for murder presented the jury with alternate modes of committing the offense: premeditated murder and felony murder. With respect to the felony-murder instruction, the predicate felony was "the offense of burglary in the first degree." Fortune contends that if his counsel had moved for judgment of acquittal on the specified ground, Fortune would have been entitled to acquittal on the burglary charge. The murder charge also would have been dismissed, Fortune argues, because there would have also been insufficient evidence in support of the felony-murder theory.

We review claims of ineffective assistance of counsel de novo. *See State v. Maxwell*, 743 N.W.2d 185, 195 (Iowa 2008). To prevail on his claim, Fortune must show by a preponderance of the evidence his counsel failed to perform an essential duty and prejudice resulted. *See Millam v. State*, 745 N.W.2d 719, 721 (Iowa 2008). The breach of an essential duty occurs when an attorney's performance falls short of "prevailing professional norms." *Ledezma v. State*, 626 N.W.2d 134, 142 (Iowa 2001). That breach results in prejudice if "but for counsel's professional errors, the result of the proceeding would have been different." *Strickland v. Washington*, 466 U.S. 668, 694 (1984). Although these claims are often preserved for postconviction-relief applications, we may resolve them on direct appeal if "the record is clear and plausible strategy and tactical considerations do not explain counsel's actions." *State v. Hopkins*, 576 N.W.2d 374, 378 (Iowa 1998).

"Iowa's burglary statute has two essential elements: (1) the defendant's unlawful presence in or breaking of an occupied structure; and (2) the defendant's intent to commit a felony, assault, or theft in the structure." *State v.*

*Walker*, 600 N.W.2d 606, 608 (Iowa 1999). "[T]he element of intent in burglary is seldom susceptible to proof by direct evidence." *State v. Olson*, 373 N.W.2d 135, 136 (Iowa 1985). "Evidence is sufficient to withstand a motion for judgment of acquittal when, viewing the evidence in the light most favorable to the State and drawing all reasonable inferences in the State's favor, 'there is substantial evidence in the record to support a finding of the challenged element.'" *State v. Williams*, 695 N.W.2d 23, 28 (Iowa 2005) (citation omitted). Substantial evidence means evidence that "could convince a rational fact finder that the defendant is guilty beyond a reasonable doubt." *Id.*

When the evidence is viewed in the light most favorable to the State, there was substantial evidence Fortune intended to commit an assault upon entering the apartment. Fortune's testimony was not credible. In particular, his "snapshot" recollection of exculpatory facts but inability to remember any inculpatory facts does not pass muster. In addition, "[a] factfinder may infer an intent to commit an assault from the circumstances of the defendant's entry into the premises and his acts preceding and following the entry." *State v. Finnel*, 515 N.W.2d 41, 42 (Iowa 1994). After leaving the apartment the first time, Fortune remained in the vicinity of the apartment waiting for the police to depart. *See State v. Schiefer*, No. 10-1234, 2011 WL 3115992, at *2 (Iowa Ct. App. July 27, 2011) (considering defendant's surveillance of apartment in finding defendant possessed intent to assault occupant). He surreptitiously entered the apartment through a back window. *See State v. Sangster*, 299 N.W.2d 661, 663 (Iowa 1980) (affirming defendant's conviction for burglary where defendant surreptitiously entered private garage). In his own words, he sought to "confront"

Aviles. Then, of course, there was the murder of Betty Simmons and the attempted murder of Jack Simmons. *See State v. Finney*, 834 N.W.2d 46, 62 (Iowa 2013) (concluding jury could infer intent for attempted murder from defendant's act of shooting at victim).

Counsel breached no duty in failing to file a meritless motion, and Fortune suffered no prejudice because any such motion would have been denied. *See State v. Lambert*, 612 N.W.2d 810, 813 (Iowa 2000) (noting a defendant's intent may be inferred from his words and actions before, during, and after the alleged assault, as well as the circumstances preceding, surrounding, and following his conduct); *Olson*, 373 N.W.2d at 136 ("To convict defendant of burglary, the jury . . . was allowed to . . . infer his intent to commit an assault from the circumstances of his entry and his subsequent acts.").

### C.

Iowa Rule of Criminal Procedure 2.24(2)(b)(6) allows a defendant to request a new trial when the verdict is "contrary to law or evidence." That means "contrary to the weight of the evidence." *State v. Ellis*, 578 N.W.2d 655, 659 (Iowa 1998). The purpose of granting a new trial based on the weight of the evidence is to avoid a miscarriage of justice in which the evidence preponderates heavily against the verdict. *See id.* at 658–59. A weight-of-the-evidence standard requires the court to independently "weigh the evidence and consider the credibility of witnesses." *Id.* at 658. "A district court should grant a motion for a new trial only in exceptional circumstances." *State v. Ary*, 877 N.W.2d 686, 705 (Iowa 2016).

In this case, Fortune moved for new trial on the ground the verdict was contrary to the weight of the evidence. The State resisted, arguing there was sufficient evidence in support of the verdict when the evidence was viewed in the light most favorable to the verdict. It is not disputed on appeal that the prosecutor argued the wrong legal standard in resisting Fortune's motion. The district court denied the motion, stating, "In this court's review of the evidence, this court determines that the evidence was overwhelming in respect to the defendant's guilt." Fortune contends the district court failed to apply the correct standard in reviewing Fortune's motion for new trial. Related, Fortune contends the district court should have granted his motion for new trial.

"We generally review rulings on motions for new trial asserting a verdict is contrary to the weight of the evidence for an abuse of discretion." *Id.* at 706. "However, we review a claim that the district court failed to apply the proper standard in ruling on a motion for new trial for errors at law." *Id.* "On a weight-of-the-evidence claim, appellate review is limited to a review of the exercise of discretion by the trial court, not of the underlying question of whether the verdict is against the weight of the evidence." *State v. Reeves*, 670 N.W.2d 199, 203 (Iowa 2003).

Fortune contends the district court applied the incorrect standard and/or its ruling was too limited to know which standard the court applied. *See State v. Root*, 801 N.W.2d 29, 31 (Iowa Ct. App. 2011) (remanding for application of weight-of-the-evidence standard where ambiguity existed in trial court's statement the verdict was supported by "competent evidence"). We disagree. While the district court could have made a better record, we are satisfied the

district court applied the right standard and conducted an independent evaluation of the evidence. The district court stated it reviewed the evidence, demonstrating independent review of all evidence rather than deference to the jury's verdict. The district court made no indication it viewed the evidence in the light most favorable to the verdict. In addition, the district court concluded the evidence was overwhelming, indicating an assessment of the weight of the evidence. *See State v. Snow*, No. 14-1042, 2015 WL 8388063, at *4 (Iowa Ct. App. Dec. 9, 2015) ("[E]ven when the district court does not provide reasons [for a ruling on a motion for new trial], an appellate court may affirm if the trial record reveals a proper basis for the court's ruling." (citing *Maxwell*, 743 N.W.2d at 192–93)); *State v. Mendoza-Ortega*, No. 12-0722, 2013 WL 2146457, at *2 (Iowa Ct. App. May 15, 2013) (affirming denial of motion for new trial where court found verdict supported by "satisfactory evidence"); *State v. Gilmore*, No. 11-0858, 2012 WL 3589810, at *4 (Iowa Ct. App. Aug. 22, 2012) (affirming denial of motion for new trial where district court stated verdict was "not contrary to the evidence"); *cf. Ary*, 877 N.W.2d at 706–07 (remanding where court explicitly applied sufficiency-of-the-evidence standard).

Fortune contends the district court should have granted his motion for new trial. In addition to arguing the verdict was contrary to the weight of the evidence, generally, Fortune asks us to consider his intoxication as it relates to his intent, specifically. Intoxication may serve to negate specific intent. *See State v. Caldwell*, 385 N.W.2d 553, 557 (Iowa 1986). The intoxication "must be to the extent that the designing or framing of [criminal] purpose is impossible." *State v. Guerrero Cordero*, 861 N.W.2d 253, 259 (Iowa 2015), *overruled on other*

*grounds by Alcala v. Marriott Int'l, Inc.*, 880 N.W.2d 699, 708 (Iowa 2016). The weight of the evidence supported a finding Fortune was not intoxicated to the extent to preclude the development of the requisite intent. Fortune waited for the first police officers to leave, demonstrating an ability to plan. He returned to the apartment. He climbed up the fire escape and through a bathroom window, demonstrating motor-skill control and dexterity. He was alert enough, even in his own story, to grapple with Jack. He drove to multiple locations after the attack. He drafted notes to four separate people. He did not appear at all impaired in his interview with police after his arrest. This intoxication argument is not persuasive.

In review of the entire record, we cannot conclude the district court abused its discretion in denying Fortune's motion. Fortune entered the apartment surreptitiously. The evidence showed Betty Simmons was stabbed nine times. Jack Simmons suffered multiple injuries. Jack was an eyewitness. His testimony was corroborated by video surveillance footage taken from the apartment. Simmons' testimony was also corroborated by the physical evidence, including the state of the apartment after the attack, DNA evidence, and the burnt umbrella. Jack's testimony was further corroborated by Aviles's testimony. Aviles testified she called Betty, coincidentally at the time of the attack, and Fortune answered Betty's phone. Aviles testified Fortune told her he was waiting for her. Fortune's suicide notes corroborate Jack's testimony. *See State v. Vrba*, No. 14-0894, 2015 WL 5965050, at *5 (Iowa Ct. App. Oct. 14, 2015) ("A defendant's post-crime conduct may be relevant to show his or her intent at the time of the offense.").

D.

Fortune argues the district court should have granted his motion to suppress evidence because his waiver of his *Miranda* rights was not knowing and voluntary. *See Miranda v. Arizona*, 384 U.S. 436, 444 (1966). Our review is de novo. *See State v. Brown*, 890 N.W.2d 315, 321 (Iowa 2017). "We give deference to the district court's fact findings due to its opportunity to assess the credibility of the witnesses, but we are not bound by those findings." *Id.*

In *Miranda*, the Court held a suspect's waiver of his Fifth Amendment privilege against self-incrimination is valid only if it is made voluntarily, knowingly, and intelligently. 384 U.S. at 444. The inquiry into whether a waiver is valid "has two distinct dimensions." *Moran v. Burbine*, 475 U.S. 412, 421 (1986).

> First, the relinquishment of the right must have been voluntary in the sense that it was the product of a free and deliberate choice rather than intimidation, coercion, or deception. Second, the waiver must have been made with a full awareness both of the nature of the right being abandoned and the consequences of the decision to abandon it. Only if the "totality of the circumstances surrounding the interrogation" reveal both an uncoerced choice and the requisite level of comprehension may a court properly conclude that the *Miranda* rights have been waived.

*Id.* (citation omitted). A written waiver of constitutional rights is not sufficient on its own to establish the waiver as knowing, intelligent, and voluntary. *State v. Vincik*, 398 N.W.2d 788, 789 (Iowa 1987). However, it is strong proof of its validity. *Fryer v. State*, 325 N.W.2d 400, 409 (Iowa 1982).

Courts use an objective standard to determine whether a defendant's waiver is voluntary, knowing, and intelligent. *Pettyjohn v. United States*, 419 F.2d 651, 654–55 (D.C. Cir. 1969). Factors bearing on voluntariness include the defendant's age, experience, prior record, level of education, and intelligence;

the length of time the defendant is detained or interrogated; whether physical punishment was used, including deprivation of food or sleep; the defendant's ability to understand the questions; the defendant's physical and emotional condition and his reaction to the interrogation; whether any deceit or improper promises were used in gaining the admissions; and any mental weakness the defendant may possess. *State v. Hodges*, 326 N.W.2d 345, 348 (Iowa 1982).

There is no basis for concluding Fortune's waiver of his *Miranda* rights was not voluntary. The videotape of the police interview shows Fortune is coherent, deliberative, and thoughtful and not in any way impaired. Fortune responded to each question appropriately. It appears he understood the questions asked of him. He displayed no particular physical or emotional reactions to the questions. Fortune ended the interview after approximately nine minutes of questioning when he invoked his right to an attorney. The interview was not lengthy. No physical punishment was used to extract the waiver. We conclude the *Miranda* waiver was knowing, voluntary, and intelligent. The district court did not err in denying Fortune's motion to suppress his statements.

## E.

Fortune argues the prosecutor committed misconduct at trial in a variety of ways. The claims were not preserved for appellate review. Fortune does not raise these claims within the framework of an ineffective-assistance-of-counsel claim. We thus deny the claims. *See Meier v. Senecaut*, 641 N.W.2d 532, 537 (Iowa 2002) ("It is a fundamental doctrine of appellate review that issues must ordinarily be both raised and decided by the district court before we will decide them on appeal.").

II.

Fortune sets forth approximately thirty claims of ineffective assistance in his pro se brief, usually devoting just a few sentences to each. As a general rule, the claims are not properly presented for appellate review. We could treat the claims as waived. *See* Iowa R. App. P. 6.903(2)(g)(3) ("Failure to cite authority in support of an issue may be deemed waiver of that issue."); *see also Soo Line R.R. Co. v. Iowa Dep't of Transp.*, 521 N.W.2d 685, 691 (Iowa 1994) (holding party's "random mention of [an] issue, without elaboration or supportive authority, is insufficient to raise the issue for our consideration"). Instead, we preserve them for postconviction-relief proceedings.

III.

For the foregoing reasons, we affirm the defendant's convictions.

**AFFIRMED.**