# IN THE COURT OF APPEALS OF IOWA

No. 23-1313
Filed December 18, 2024

**STATE OF IOWA,**
 Plaintiff-Appellee,

**vs.**

**NESSIAH TRE'VERNE CLARK,**
 Defendant-Appellant.
_____

 Appeal from the Iowa District Court for Scott County, Joel W. Barrows,

Judge.


 A defendant appeals his convictions and sentences arising from a shooting.

**CONVICTIONS AFFIRMED; SENTENCES AFFIRMED IN PART, VACATED IN**

**PART, AND REMANDED FOR RESENTENCING.**


 Martha J. Lucey, State Appellate Defender, and Theresa R. Wilson,

Assistant Appellate Defender, for appellant.

 Brenna Bird, Attorney General, and Zachary Miller, Assistant Attorney

General, for appellee.


 Considered by Badding, P.J., Langholz, J., and Gamble, S.J.*

 *Senior judge assigned by order pursuant to Iowa Code section 602.9206

(2024).

**GAMBLE, Senior Judge.**

Nessiah Clark appeals his convictions and sentences for assault while using or displaying a dangerous weapon, felon in possession of a firearm, assault while participating in a felony, intimidation with a dangerous weapon, and use of a dangerous weapon in commission of a crime. We vacate the assault-with-a-dangerous-weapon sentence and the mandatory minimum imposed on the intimidation-with-a-dangerous-weapon-without-intent sentence, and we remand for resentencing. We otherwise affirm Clark's convictions and sentences.

### I. Background Facts and Proceedings.

The questions in this appeal arise from differing viewpoints of events surrounding Clark shooting Delmont Thomas at a gas station on August 24, 2022. The fact that Clark shot at Thomas is not contested, only whether it was justified. We will therefore consider the story told by each participant to the jury, with additional facts as provided by the additional witnesses.

First, we recount what can be seen on the gas station's surveillance videos. Thomas parked a white sedan at the gas pumps; three other vehicles were parked on the opposite side of the gas pumps at this time. Several people were inside the store. Two SUVs were parked in front of the store when Thomas pulled in. He approached the front passenger side of a light-colored SUV that was parked between his car and the store's door; he had nothing in his hands. The SUV's back windows were tinted. Clark can be seen exiting the rear passenger side of the SUV and pointing a gun at Thomas, firing several times. Thomas fled across the parking lot, around the corner of the store, and behind a fence to the side. As he moved across the parking lot, Thomas pulled something out of his pocket with

his right hand, which appears to be a gun.  Clark ran to the door of the store, alerted the driver of the SUV, and the SUV then left.

*Thomas.*  Early in the evening, Thomas stopped to fill up his white sedan with gas after giving a ride to a friend.  He scrolled on his phone a little bit, then got out of the car, taking his phone off the charger and placing it in his pocket.  He was wearing baggy black sweatpants, two white t-shirts, and white tennis shoes; his keys were on a lanyard which was "probably" attached to his pocket.  Thomas circled around the front of his car to go inside the store, but he saw a woman he recognized from mutual social media friends in the passenger seat of an SUV in the parking lot in front of the store.  They smiled at each other, and she asked, "what's up?"  Thomas approached the SUV to talk with her.  The driver's seat was empty, but he could see there was someone wearing a white shirt in the back seat.

Then, "at that point, [he] was shot."  Thinking the shot came from behind him, Thomas turned and ran, trying to go around the corner of the building.  His sweatpants started to fall, and he reached for his phone to call his mom.  One of his shoes fell off during his flight.  When he reached the back parking lot, he hid behind a fence and checked where he had been hit.  Thomas found wounds on his rib cage and a graze on his arm, took off one of his shirts and held it against his rib injury.  Several men—including one of Thomas's friends—approached and tried to help Thomas as he returned to his car.  The SUV had left by then.  Thomas found his keys on the ground in the parking lot, took his car to his uncle's home, and went to the hospital with his friend.

Thomas indicated that while he recognized Clark from school, he did not really know him. Thomas testified he did not have a gun that day, had never owned a gun, and his only experience with firearms was shooting a gun at a firing range.

*Clark.* Clark and three friends were at the gas station that evening to pick up some tobacco products. The driver of their SUV went into the store, while the other three waited in the vehicle. Clark noticed the white sedan driving past and knew it belonged to Thomas's "baby mother." Clark said he and Thomas had been friends a few years before, and that Thomas's grandmother and his own mother were neighbors. According to Clark, after Thomas's cousin died around 2018, Thomas started to distance himself from Clark because "he didn't like the associates that [Clark] hung around."

Clark admitted he carried a gun even though he was not supposed to, "[b]ecause if [he] didn't have a gun, [he] probably wouldn't be here" and he needed it to protect himself. He said when Thomas was greeting the woman in the front passenger seat, he "told her to make sure he doesn't approach the car . . . we're not cool at all in any type of way." Clark said he saw Thomas move a gun from his waistband to his right pocket as he approached the car, and Thomas asked the passenger "Who's in here? You must be hiding the [opposition]." Thomas looked in the car, locked eyes with Clark, and Clark saw Thomas reach into the pocket with the gun. "[A]nd in a matter of those seconds, [Clark] was opening the door to get [Thomas] away from [him] as [Thomas] was reaching for that, and the incident took place." When asked what prompted him to shoot, Clark said, "I was scared. I thought he was going to try to kill me when he reached for that gun." Then, "as [Thomas] was running away from the incident, he was also pointing that, trying to

get a shot off at [Clark]. That's why [he] continued to fire, to make sure [Thomas] stayed away from [him] and didn't get any type of shot out to endanger anyone in [the] car."

Clark indicated his motive was to get Thomas away from him, not to kill Thomas. As soon as Thomas was gone, Clark "left the scene." He admitted Thomas would have no reason to know he would have been in the SUV, as his window was up and tinted and he had not been in that vehicle with Thomas around before. Clark and Thomas had no direct personal conflict, but Clark had seen things posted on social media by Thomas relating to a gang and disrespecting Clark's deceased relations.

Clark fired the gun until he was out of bullets, firing as Thomas "was pointing that firearm at [him], running." While he acknowledged the people at the gas pumps and in the store, he denied firing in a direction with members of the public. And, although Clark was firing a gun with people in and around the station without much experience, "it's less dangerous than getting shot." He explained, "I wasn't . . . thinking about shooting [Thomas]. I was thinking about keeping [him] away from me so I don't get shot."

*Other witnesses.* A neighborhood resident testified to hearing several "pop" sounds he initially thought were fireworks. He looked at the gas station, "saw everybody on the ground, pretty much, that was in the gas station," saw people scattering, and realized it was not fireworks. The resident saw Thomas run around the back of the building and an SUV soon left the lot. He thought Thomas "had something in his hand with him," but "wasn't sure if it was a weapon of some sort or something else."

An officer who reviewed the surveillance footage wrote in his report that Thomas appeared "to be holding his waistband with his left hand . . . with his right hand you see him take a black, handheld item of some sort and place it into his right pant pocket" as he approached the SUV. And later, "While fleeing, [Thomas] pulls out a black item out of his right pocket and points in towards [Clark]. The footage of this moment confirms [Thomas] had a handgun."

A crime scene technician indicated she found eleven bullet casings; a police sergeant said they were found near where the SUV had been parked and nowhere else in the lot. According to a police sergeant, it appeared "one round went through the cage [housing propane tanks]" but luckily did not rupture any of them. The technician also described the damage, including three bullet holes in the propane tank cage and one in the wall of the gas station store. The sergeant noted some changes in Thomas's story during the investigation when asked about observations from the surveillance videos and who brought him to the hospital. Upon the sergeant's questioning about the item resembling a gun, Thomas denied having one.

An investigating detective also reviewed the surveillance video. He described Thomas approaching the vehicle as "jovial"—"His facial expressions were that he recognized somebody in the car, and he was simply going up to say hello." The detective walked through the surveillance video described above. He also noted the black object in Thomas's right hand as he fled and opined it looked like a firearm. The detective interviewed Clark, asking him what happened that day. Clark said he was protecting himself, but beyond that simply responded "that he had no comment on it."

At trial, Clark was charged with attempted murder, felon in possession of a firearm, assault while participating in a felony, intimidation with a dangerous weapon, and use of a dangerous weapon in the commission of a crime; the State also requested a sentencing enhancement for use of a dangerous weapon while participating in a forcible felony. The jury found him guilty of assault (as a lesser-included offense of attempted murder), felon in possession of a firearm, assault while participating in a felony, a lesser-included intimidation with a dangerous weapon, and use of a dangerous weapon in commission of a crime, and found Clark was using a dangerous weapon in the two assault and the intimidation convictions. Clark appeals.

## II. Standard of Review.

A motion for judgment of acquittal is a challenge to the sufficiency of the evidence, which we review for correction of errors at law. *State v. Serrato*, 787 N.W.2d 462, 465 (Iowa 2010). The verdict "must be supported by substantial evidence," which we view "in the light most favorable to the State." *Id.* (citation omitted). Claims a verdict is not supported by substantial evidence are reviewed for correction of errors at law. *State v. Mathis*, 971 N.W.2d 514, 516 (Iowa 2022). This is also our standard of review for challenges to jury instructions and alleged failures to merge convictions. *State v. Ambrose*, 861 N.W.2d 550, 554 (Iowa 2015); *State v. Johnson*, 950 N.W.2d 21, 23 (Iowa 2020). And we review challenges to mandatory minimums under sentencing-enhancement statutes for correction of legal error. *State v. Wood*, No. 20-0327, 2021 WL 3895909, at *3 (Iowa Ct. App. Sept. 1, 2021).

## III. Analysis.

A. **Justification—judgment of acquittal.** Clark's first argument is the State failed to disprove his justification defense so the court should have granted his motions for judgment of acquittal (which he called directed verdict at trial). Clark asserts he "had a reasonable belief that Thomas was going to shoot him and possibly the other occupants of his vehicle, and his actions in response were reasonable given his history and his inability to retreat."

"Justification is a statutory defense that permits a defendant to use reasonable force to defend himself or herself." *State v. Lorenzo Baltazar*, 935 N.W.2d 862, 869 (Iowa 2019). The person exerting the "reasonable force" must "reasonably believe[ ] that such force is necessary to defend oneself or another from any actual or imminent use of unlawful force." Iowa Code § 704.3 (2022). "Reasonable force: is defined as:

> that force and no more which a reasonable person, in like circumstances, would judge to be necessary to prevent an injury or loss and can include deadly force if it is reasonable to believe that such force is necessary to avoid injury or risk to one's life or safety or the life or safety of another, or it is reasonable to believe that such force is necessary to resist a like force or threat.

*Id.* § 704.1(1). In the past, "Iowa caselaw recognized an implied duty to follow an alternative course of action" such as retreating as far as reasonable and safe. *Lorenzo Baltazar*, 935 N.W.2d at 870. Despite intervening statutory changes, the duty to retreat remains if the person is engaged in an illegal activity—such as illegally possessing a handgun—or is not lawfully present. *Id.* at 870–71. The person asserting the defense "bears the initial burden of producing sufficient evidence to support the instruction," after which "the burden shifts to the State to

prove lack of justification beyond a reasonable doubt." *State v. Kuhse*, 937 N.W.2d 622, 628 (Iowa 2020).

Because his motions for judgment of acquittal were made before the instructions were given to the jury, Clark urges the district court's consideration was under the correct legal standard, and our review should do likewise. The State argues we should consider Clark's justification argument using the instructions given to the jury as the law of the case. These are two different questions: (1) was there sufficient evidence to submit the question of justification to the jury or was justification established as a matter of law for the court to grant judgment of acquittal, and (2) was the evidence sufficient for the jury to find Clark was not justified in his actions.

"Evidence is sufficient to withstand a motion for judgment of acquittal when, viewing the evidence in the light most favorable to the State and drawing all reasonable inferences in the State's favor, 'there is substantial evidence in the record to support a finding of the challenged element.'" *State v. Williams*, 695 N.W.2d 23, 28 (Iowa 2005) (citation omitted). "It is not the province of the court, in determining the motion, to resolve conflicts in the evidence, to pass upon the credibility of witnesses, to determine the plausibility of explanations, or to weigh the evidence; such matters are for the jury." *Id.* (citation omitted). The court and jury were presented with conflicting stories from Thomas and Clark regarding the circumstances leading up to Clark shooting Thomas. The court found substantial evidence existed as to each element, and the question of justification was fundamentally a question of fact for the jury to consider all the evidence and decide. We agree. The district court did not err in submitting the issue to the jury.

Clark urges he "had a reasonable belief that Thomas was going to shoot him and possibly the other occupants of his vehicle, and his actions in response were reasonable given his history and his inability to retreat." The jury was instructed it could find Clark's use of force not justified if (1) he lacked a reasonable belief the use of force was necessary to prevent injury; (2) he used unreasonable force; or (3) he was participating in attempted murder, assault while participating in a felony, or intimidation with a dangerous weapon. While Clark would have us ignore the instructions and consider this under what he asserts is the correct version of the law, we review the verdict as submitted to the jury. *See State v. Crawford*, 974 N.W.2d 510, 521 (Iowa 2022) ("If a party fails to alert the district court of the erroneous instructions, he cannot complain that the evidence was insufficient to support a legal proposition contrary to the one instructed to the jury. When that happens, we apply the law as set out in the instructions rather than the applicable law.").

Here, given Thomas's empty hands as he approached the woman in the passenger seat and the speed of Clark's reaction, the jury could have reasonably concluded Clark lacked a reasonable belief the use of force was necessary. The jury could also have concluded shooting eleven times at a fleeing man was not a reasonable use of force. And with the verdicts entered, the jury did find Clark was participating in assault while participating in a felony and intimidation with a dangerous weapon as he fired the weapon. Under the law-of-the-case doctrine and the verdicts entered by the jury, the State disproved Clark's justification defense.

**B. Instruction.**  Clark's second argument addresses what he asserts was an incorrect instruction to the jury as to justification.  Clark did not object to the marshaling or justification instructions at trial.  He urges error preservation rules requiring a timely trial objection should not apply and the court should exert its power to address the issue.  But we are bound by the error preservation rule as stated by our supreme court: "We have repeatedly held that timely objection to jury instructions in criminal prosecutions is necessary in order to preserve any error thereon for appellate review."  *State v. Davis*, 951 N.W.2d 8, 16 (Iowa 2020) (citation omitted); *see also State v. Beck*, 854 N.W.2d 56, 64 (Iowa Ct. App. 2014) ("We are not at liberty to overrule controlling supreme court precedent.").  Because Clark did not object to the instructions, he did not preserve error, and we do not address his claim.  Thus, "the instruction, right or wrong, becomes the law of the case."  *State v. Taggart*, 430 N.W.2d 423, 425 (Iowa 1988).

**C. Sufficiency of the evidence—intimidation with a dangerous weapon.**  Next, Clark challenges the sufficiency of the evidence on his conviction for intimidation with a dangerous weapon.  Here, he asserts "he did not shoot into an assembly of people" and did not place anyone besides Thomas in fear.  Clark "acknowledges at least one of the bullets he fired hit the outside of the store," but argues this is not sufficient because the occupants of the building were not in fear of injury.  He specifically notes Thomas was not inside the building.

The instruction to the jury on intimidation with a dangerous weapon with intent required the State prove the following elements:

> 1. On or about the 24th day of August, 2022, the defendant discharged a firearm/handgun at or into a building, vehicle or within an assembly of people.

2. The firearm/handgun was a dangerous weapon, as explained in Instruction No. 17.

3. [Thomas] actually experienced fear of serious injury and his fear was reasonable under the existing circumstances.

4. The defendant discharged the firearm/handgun with the specific intent to injure or cause fear or anger in [Thomas].

The jury found the State proved the first three elements, but not the fourth, resulting in a conviction for the class "D" felony instead of a class "C" felony. *See* Iowa Code § 708.6. The evidence presented clearly shows that Clark fired at least one bullet into the wall of the store (as well as three bullets into a cage of propane tanks attached to the front of the store). Nor is there any contesting the second element. Thomas's testimony established he experienced fear of serious injury, and the jury could conclude that fear was reasonable under the circumstances. We find the evidence presented at trial is sufficient to support Clark's conviction of intimidation with a dangerous weapon.

Under the law of the case provided in the instructions, only Thomas needed to experience fear of injury. And with this instruction, the State did not have to prove anyone other than Thomas experienced a reasonable fear of serious injury.

**D. Merger.** Clark further urges his convictions and sentences for intimidation with a dangerous weapon, the assault enhancement for use of a dangerous weapon, and use of a dangerous weapon in the commission of a crime should all merge under the intimidation charge. The State concedes the assault cannot be enhanced by use of a dangerous weapon but argues the offenses do not merge. And the State argues intimidation with a dangerous weapon and use of a dangerous weapon in the commission of a crime have different elements and so cannot merge.

The merger statute provides, "No person shall be convicted of a public offense which is necessarily included in another public offense of which the person is convicted." Iowa Code § 701.9. To determine if offenses merge, first we look to the elements to determine if the greater offense can be committed without also committing the lesser offense. *State v. Brown*, 996 N.W.2d 691, 697 (Iowa 2023). The elements of the offenses must show complete overlap to merge. *State v. Bloom*, 983 N.W.2d 44, 51 (Iowa 2022). But even if the offenses do not merge under the elements test, we also must examine if the legislature intended multiple punishments for the offenses. *Id.*; *Brown*, 996 N.W.2d at 699. "[I]f one offense is not an included offense within the other, there is a presumption that multiple punishments can be assessed." *Brown*, 996 N.W.2d at 699 (cleaned up).

*Assault.* The jury instruction for assault listed two elements:

> 1. On or about the 24th day of August, 2022, [Clark] did an act which was intended to cause pain or injury or result in physical contact which was insulting or offensive, or place [Thomas] in fear of an immediate physical contact which would have been painful, injurious, insulting or offensive to him.
> 2. [Clark] had the apparent ability to do the act.

And the jury found in a special interrogatory that Clark was in immediate possession and control, displayed, or was armed with a dangerous weapon during the offense.

We agree with the State that assault with a dangerous weapon under section 708.1 and intimidation with a dangerous weapon without intent under section 708.6(2) have different elements and would not merge under an elements test. "Assault is a specific-intent crime." *State v. Krogmann*, 998 N.W.2d 141, 158 (Iowa 2023). This is because a defendant must intend to cause pain, injury,

insulting or offensive contact, fear of offensive or injurious contact, or intentionally point or display a firearm toward another. *See* Iowa Code § 708.1(2); *State v. Fountain*, 786 N.W.2d 260, 265 (Iowa 2010). Class "D" felony intimidation with a dangerous weapon under section 708.6(2) is a general-intent crime. *State v. Vavrik*, 336 N.W.2d 193, 194 (Iowa 1983) (distinguishing between the intent version of the predecessor statute and the "threatening" version, concluding assault is "not a lesser included offense of the 'threatens to shoot' alternative"); *cf. State v. Johnson*, 534 N.W.2d 118, 126–27 (Iowa Ct. App. 1995) (concluding language of the class "D" felony version of the predecessor statute "implies a general criminal intent"). This alternative of intimidation with a dangerous weapon lacks the element of "the intent to injure or provoke fear or anger in another" that distinguishes the crime of intimidation with a dangerous weapon with intent under section 708.6(1). Without the intent element, section 708.6(2) focuses on the effect the act has on another that "thereby places the occupants or people in reasonable apprehension of serious injury." This is the hallmark of a general-intent crime. "General-intent crimes focus 'not on the defendant's mental state but on the result defendant's purposeful acts cause in a reasonable person.'" *In re D.S.*, 856 N.W.2d 348, 352 (Iowa 2014) (citation omitted). Because assault requires a higher level of intent than intimidation with a dangerous weapon without intent, the convictions do not merge.

But even if the convictions do not merge under the elements test, we look at whether the legislature intended multiple punishments. *Bloom*, 983 N.W.2d at 51. Section 708.2(3) provides, "A person who commits an assault . . . and uses or displays a dangerous weapon in connection with the assault, is guilty of an

aggravated misdemeanor. This subsection does not apply if section 708.6 or 708.8 applies." Section 708.2(3) does not differentiate between the subsections of section 708.6. Our supreme court has found this express statutory language indicates the dangerous-weapon assault and going armed with intent (a violation of section 708.8) are "sufficiently similar to merit freedom from duplicate punishment." *State v. Ray*, 516 N.W.2d 863, 867 (Iowa 1994). Similarly, we have merged domestic abuse assault by use or display of a dangerous weapon and intimidation with a dangerous weapon with intent "when the same facts give rise to both convictions." S*ee State v. Johnson*, No. 11-1622, 2012 WL 3860746, at *1–2 (Iowa Ct. App. Sept. 6, 2012) (noting the defendant asserted "the final sentence of section 708.2A(2)(c) demonstrates the legislature's intent that a singular punishment be enforced for these two offenses" and the State conceded merger of the offenses). The State concedes the punishment for assault with a dangerous weapon cannot be applied, but in place of merger it requests we "reduce the defendant's assault conviction to a simple misdemeanor assault." In the State's view, because that sentence ran concurrent to his intimidation conviction, the sentence would already be discharged.

We think the legislature's statutory directive is sufficiently clear to require merger of Clark's aggravated misdemeanor sentence for assault with a dangerous weapon with his class "D" felony sentence for intimidation with a dangerous weapon; not for us to amend the offense of conviction. We find these sentences should be merged, vacate the sentence imposed for assault with a dangerous weapon, and remand for resentencing.

*Use of a dangerous weapon.*  The elements of use of a dangerous weapon in the commission of a crime are:

> 1. On or about the 24th day of August, 2022, the defendant was armed with a handgun.
> 2. The handgun was a dangerous weapon as defined in Instruction No. 17.
> 3. The defendant used the dangerous weapon in the commission of a crime.

Here, Clark argues, "It would be impossible for a defendant to discharge a dangerous weapon at/in/into an occupied structure or within an assembly of people without being armed with and using the dangerous weapon."  Which is true, but it neglects the last element "in the commission of a crime."  He does not explain how the "commission of a crime" required in the use of a dangerous weapon offense is wholly encompassed in the intimidation conviction.  And we note the intimidation charge he was convicted of only includes actual causation of fear, not the intent to cause fear (necessary to constitute assault).  Meanwhile, the requirement for the commission of a crime is nowhere in the elements for intimidation, and therefore use of a dangerous weapon in the commission of a crime cannot merge into intimidation with a dangerous weapon under the elements test.  *Cf. State v. Orr*, No. 22-1743, 2024 WL 111857, at *4–5 (Iowa Ct. App. Jan. 10, 2024) (finding the offenses going armed with intent and intimidation with a dangerous weapon do not merge).  Nor is there a statutory directive indicating an intent to avoid multiple punishments, so we do not merge the sentences.

**E. Mandatory minimum.**  Finally, Clark argues the forcible felony use of a dangerous weapon mandatory minimum enhancement of Iowa Code section 902.7 does not apply to intimidation with a dangerous weapon without intent because it

is not a felonious assault, so it is an illegal sentence.[1]  Clark urges the version of intimidation he was convicted of does not include the intent element, so does not constitute an assault.

"A 'forcible felony' is any felonious . . . assault."  Iowa Code § 702.11(1). "[A] crime is a form of 'felonious assault' if it is a felony and it necessarily includes an assault."  *Vavrik*, 336 N.W.2d at 194 (citation omitted) (determining "involuntary manslaughter does not constitute a 'felonious assault' (or forcible felony) because it is possible to commit involuntary manslaughter without committing an assault").

Earlier, we considered whether assault with a dangerous weapon merged with Clark's conviction for intimidation with a dangerous weapon without intent and concluded the offenses did not merge based on the elements, only merging the sentences based on the legislature's statutory directive.  And the legislature established two versions of intimidation with a dangerous weapon—one performed "with the intent to injure or provoke fear or anger in another" and places "people in reasonable apprehension" of injury, Iowa Code § 708.6(1), and another where the same act is performed and the reasonable apprehension occurs without intent needing to be proved, Iowa Code § 708.6(2).  *Cf. Vavrik*, 336 N.W.2d at 194 (examining the predecessor statute); *Johnson*, 534 N.W.2d at 126–27.

The jury here found the State did *not* prove beyond a reasonable doubt that Clark's discharge of the weapon was done "with the specific intent to injure or

---

[1] Clark does not challenge the mandatory minimum enhancement as applied to his assault while participating in a felony conviction.  And our supreme court has specifically found assault while participating in a felony constitutes a felonious assault and is therefore a forcible felony.  *State v. Iowa Dist. Ct.*, 308 N.W.2d 27, 29 (Iowa 1981).

cause fear or anger," thereby rejecting the felonious assault version of the offense. Since intimidation with a dangerous weapon without intent is a general intent crime that lacks the specific intent required of a felonious assault, we conclude the minimum sentence of section 902.7 does not apply and the district court erred in imposing it.

## IV. Disposition.

We affirm the district court's submission of the justification question to the jury and find substantial evidence supports the jury's finding under the law of the case. Clark's jury-instruction issue is not preserved, and we do not address it. Substantial evidence supports Clark's conviction for intimidation with a dangerous weapon without intent. Clark's conviction for assault with a dangerous weapon does not merge with his intimidation conviction, but the sentence does. His conviction and sentence for use of a dangerous weapon do not merge with intimidation. And we find intimidation with a dangerous weapon without a proof of intent does not constitute a felonious assault for sentencing purposes. We affirm Clark's convictions. And we remand to the district court for resentencing, merging the sentence for assault with a dangerous weapon into the intimidation sentence and removing the mandatory minimum from the intimidation with a dangerous weapon sentence.

**CONVICTIONS AFFIRMED; SENTENCES AFFIRMED IN PART, VACATED IN PART, AND REMANDED FOR RESENTENCING.**