# IN THE COURT OF APPEALS OF IOWA

No. 24-1118
Filed October 15, 2025

**STATE OF IOWA,**
  Plaintiff-Appellee,

**vs.**

**CURTIS RANDELL PADGETT,**
  Defendant-Appellant.
_____

Appeal from the Iowa District Court for Linn County, Ian K. Thornhill, Judge.

A defendant appeals his conviction for murder in the first degree. **AFFIRMED.**

Martha J. Lucey, State Appellate Defender, and Vidhya K. Reddy, Assistant Appellate Defender, for appellant.

Brenna Bird, Attorney General, and Adam Kenworthy, Assistant Attorney General, for appellee.

Considered without oral argument by Tabor, C.J., Greer, J., and Bower, S.J.*

*Senior judge assigned by order pursuant to Iowa Code section 602.9206 (2025).

**BOWER, Senior Judge.**

Curtis Padgett appeals his conviction for first-degree murder following a bench trial. He claims there is insufficient evidence he was the perpetrator of the beating and stabbing that resulted in the death of Dennis First in 2007. He also contends the verdict is contrary to the weight of the evidence and the district court abused its discretion by denying his motion for new trial. Upon our review, we affirm.

## I.  Background Facts and Proceedings

In 2007, Dennis First was found dead inside his Cedar Rapids apartment. There was no sign of forced entry. First's body was lying "sideways on a pull-out bed with his feet on the floor and his right hand on the side of his neck." He had been beaten and also stabbed in the neck with a paring knife from his kitchen. Padgett was friends with First, and Padgett lived in the same apartment building. Several critical pieces of evidence implicated Padgett in the case, including his fingerprint on a knife sharpener and his DNA inside blood-soaked oven mitts in First's kitchen. Also, his lug-sole boots matched footwear impressions lifted from First's floor, one of which was made on top of a blood drop.[1]

However, no charges were filed, and the case went cold. In 2016, police revisited the case, which eventually led the State to charge Padgett with first-degree murder. Padgett pled not guilty and waived his right to a jury trial. After a bench trial, the district court found Padgett guilty as charged. In a detailed verdict, the court made the following findings:

---

[1] The side of Padgett's left boot contained a trace of blood, but it was unable to be forensically tested.

It is undisputed and clearly established by the evidence in this case that Dennis First died in his apartment . . . sometime between about 12:30 p.m. on May 10, 2007, and about 8:00 a.m. on May 11, 2007. It is also undisputed that Dennis First was killed by being severely beaten and having his jugular vein cut. The contested issues in this case are whether Defendant was the individual who killed Dennis First, and if he was, what was Defendant's state of mind when doing so.

After considering both the direct and circumstantial evidence presented by the State in this case, the Court is convinced that Defendant severely beat Dennis First and then cut his neck with a knife, puncturing the victim's jugular vein in two places.

The scientific evidence presented by the State is extremely compelling. Defendant's DNA was found mixed with the victim's DNA in the blood-soaked oven mitts. Michael Halverson testified that a sample that contains a more prevalent amount of DNA from one donor can cancel out or mask the presence of DNA from other donors. Because the oven mitts were soaked in the victim's blood and, therefore, contained an overwhelming amount of the victim's DNA, yet a testable sample of Defendant's DNA was also identified, convinces the Court that the amount of Defendant's DNA was more than just a trace. This leads the Court to the conclusion that Defendant handled the oven mitts for a significant amount of time at or near the time the victim's blood was left on the oven mitts.

Defendant's fingerprint was found on the knife sharpener, which was found in the drawer with the knife containing blood. No other fingerprints were located on the knife sharpener. The sharpener itself also contained blood. Ron Johnson also testified as to the fragility of fingerprints and how many factors, including physical surfaces, movement, and environmental factors can distort or destroy fingerprints. The fact that Defendant's fingerprint on the knife sharpener was not distorted or destroyed supports the conclusion that the fingerprint, like Defendant's DNA on the bloody oven mitts, was left very close in time to Dennis First's death. This not only places Defendant in the victim's apartment at that time of his death, it also proves Defendant accessed the drawer containing the weapon used to cut the victim's jugular vein.

Law enforcement collected footwear impressions from the crime scene, a pair of work boots from Defendant's apartment, and a receipt showing the work boots were newly purchased two weeks prior to the victim's death. Dennis Kern compared the multiple footwear impressions with the boots seized from Defendant's apartment. Mr. Kern was able to say that multiple impressions corresponded to both the right and left boots of Defendant. One of the impressions was also made on top of a wet drop of blood, showing it was made closely after Dennis First was injured. Additionally, no wear marks or randomly acquired individual

characteristics were identified on the footwear impressions, and the stippling was well defined. This supports the conclusion that the boots which made these impressions had not been significantly worn prior to making the impressions, which also supports the conclusion that the boots which made these impressions were newer.

Law enforcement and lay witness testimony establishes credible circumstantial evidence also relied on by the Court in reaching its verdict. Defendant and Dennis First lived in the same apartment building. Dennis First lived alone in an efficiency apartment. On May 10, 2007, Dennis First was alive and showed no signs of having suffered any physical trauma. The severe beating and subsequent stabbing/cutting of his neck took place in the victim's apartment. There were no signs of forced entry which indicates that Dennis First knew his assailant and let this assailant into his apartment.[1] Defendant and the victim were friends and spent time together, sometimes drinking alcohol. In the years after Dennis First's death, Defendant exhibited behaviors and made statements that, taken together, point to Defendant's consciousness of guilt. On the anniversary of Dennis First's death, Defendant would cry. Just after the three-year anniversary of the victim's death, Defendant was drinking alcohol and emotional. He held a knife to the right side of his own neck and said "this is how Dennis died." This prompted his girlfriend to ask Defendant if he had killed Dennis First. Defendant responded by saying "I wouldn't tell you because you would go and snitch on me."

The totality of credible evidence in this case leads the Court to find, beyond a reasonable doubt, that sometime from in the evening of May 10 into the early morning hours of May 11, 2007, Defendant, using his hands, feet, an unknown solid object, and/or a combination of all three, physically assaulted Dennis First causing serious injuries to his head and chest, including two broken ribs, a fracture of the nasal bone, bruising under the scalp, and multiple contusions, abrasions, and lacerations. This beating either caused Dennis First to lose consciousness or severely incapacitated him, and left the victim lying sideways on his bed, much in the same position his body was ultimately discovered. As Dennis First lay there incapacitated from the beating, Defendant went to the kitchen area of the apartment. He grabbed a knife (Exhibit 70) from a drawer, handling the knife sharpener (Exhibit 71) in the process and leaving his left index fingerprint on it. Defendant also located and grabbed two oven mitts (Exhibit 72) and put them on his hands. Defendant then walked back to the east side of the bed, nearest the victim's head and where the victim remained incapacitated.

Defendant used one hand for leverage and with the knife in his other hand, Defendant repeatedly sliced the right side of the victim's neck causing a gaping 3.5-inch-long wound. This knife wound cut through both tissue and muscle and punctured the victim's

jugular vein in two places. Defendant used tremendous force to make this wound. In the process of slicing the victim's neck, the knife slipped and made a cut in the bed, further corroborating the conclusion that the victim was lying down incapacitated when Defendant was making these cuts. By the time Defendant finished slicing Dennis First's neck, the oven mitts he was wearing were soaked in blood. Defendant carefully returned to the kitchen, leaving a trail of blood drops on the way. A spot of blood ended up on the side of the heel toward the back nearest to the instep of Defendant's left boot (Exhibit 73B), and Defendant stepped on a drop of blood with his right boot (Exhibit 73A). Defendant placed the oven mitts and the knife back into their respective drawers and exited the apartment, locking the door on his way out and leaving Dennis First to die.

The Court also finds beyond a reasonable doubt that Defendant acted with malice aforethought in killing Dennis First and his conduct was premeditated. First, the severity in which the victim was beaten shows Defendant acted with an evil and unlawful purpose beyond simple rage in the heat of passion. The multiple fractures and contusions Dennis First suffered from the beating evinces a deliberate or fixed intent to do injury on the part of Defendant. This beating was no accident. Second, and even more convincing, is Defendant's extended assault of the victim using a knife. After Dennis First was rendered incapacitated by the beating and while lying face up and defenseless on his bed, Defendant walked to the kitchen, located a weapon (the knife) and improvised a means to help conceal his identity and keep his hands clean (the oven mitts). Defendant then returned to the bed where Dennis First remained and cut his neck. At a minimum, from the time Defendant first left the victim's side and headed to the kitchen until he returned to the bed with the knife, Defendant contemplated how he was going to finish the job—how he was going to kill Dennis First. Defendant's actions in seeking out, securing, and then using a knife to cut the victim's neck were done willfully, deliberately, and with premeditation.

---

[1] David Palumbo testified he heard Dennis First and Defendant arguing in Dennis First's apartment in the early morning hours of May 11, 2007. Although the Court has no issues with Mr. Palumbo's credibility, the fact that he did not initially report this information to the police when interviewed in May of 2007, and only first reported it two years later, calls into question the reliability of the information. The Court gave this testimony no weight in reaching its conclusions in this matter.

Padgett moved for a new trial, claiming the verdict was contrary to the weight of the evidence. The district court denied the motion and sentenced Padgett to life in prison without the possibility of parole. Padgett appeals.

## II. Sufficiency of Evidence

Padgett was found guilty of murder in the first degree, which according to the district court,[2] required proof of the following elements:

> 1. On or about the 11th day of May, 2007, the Defendant inflicted blunt force trauma upon Dennis First and/or cut/stabbed Dennis First in the neck piercing his jugular vein;
> 2. Dennis First died as a result of the blunt force trauma and/or the cutting/stabbing of his neck;
> 3. The Defendant acted with malice aforethought; and
> 4. The Defendant acted willfully, deliberately, premeditatedly, and with a specific intent to kill Dennis First.

On appeal, Padgett challenges only the State's proof of his identity. "Identity is an element of a criminal offense which the State must prove beyond a reasonable doubt." *State v. Jensen*, 216 N.W.2d 369, 374 (Iowa 1974). Padgett concedes police found a pair of boots "with a lug sole pattern" containing a blood spot in his apartment, the footwear impression of which matched a print found in First's apartment; Padgett's fingerprint was found on First's knife sharpener; and Padgett's DNA was found on both the bloody oven mitts in First's apartment. But Padgett claims he was friends with First; he was "in First's apartment quite a bit"; he "had cooked for First in the past"; several other residents of the apartment building were not interviewed but should have been; the footwear-impression expert could not definitively say the print in First's apartment originated from

---

[2] The district court analyzed the crime under the elements set out in uniform jury instruction 700.1 from the Iowa State Bar Association and the relevant provision of the Iowa Code in effect in 2007, section 707.2(1).

Padgett's boot; footwear-impression examinations are inherently unreliable; no admissions or conflicting statements by Padgett were presented at trial; and a blood smear outside First's apartment did not contain Padgett's DNA, but the blood was not tested in relation to other residents of the apartment building.

> In reviewing a challenge to the sufficiency of the evidence, the court views the evidence in the light most favorable to the State, including all reasonable inferences that may be fairly drawn from the evidence. All evidence is considered, not just that of an inculpatory nature. A verdict will be upheld if substantial evidence supports it. Evidence is substantial if, when viewed in the light most favorable to the State, it can convince a rational factfinder that the defendant is guilty beyond a reasonable doubt. Evidence is not rendered insubstantial merely because it might support a different conclusion; the only question is whether the evidence supports the finding made.

*State v. LuCore*, 989 N.W.2d 209, 215–16 (Iowa Ct. App. 2023) (cleaned up).

Padgett's claim on appeal aims at discrediting certain evidence, relying on other possible interpretations of the evidence, and challenging the State's investigation. However, in reviewing sufficiency-of-the-evidence challenges, it is not our role "to resolve conflicts in the evidence, to pass upon the credibility of witnesses, to determine the plausibility of explanations, or to weigh the evidence." *State v. Williams*, 695 N.W.2d 23, 28 (Iowa 2005) (citation omitted). And "the question at hand is not what evidence the State might have obtained with further investigation. The question is whether the evidence admitted at trial is adequate to support [Padgett]'s conviction." *State v. Burton*, No. 23-1411, 2025 WL 1822514, at *3 (Iowa Ct. App. July 2, 2025).

Viewing the evidence in the light most favorable to the State, we conclude substantial evidence supports the court's finding that Padgett killed First. The State presented both direct evidence and circumstantial evidence allowing a

rational factfinder to conclude beyond a reasonable doubt Padgett was the person who beat and stabbed First. The State's evidence went well beyond speculation, suspicion, or conjecture. We affirm on this issue.

## III.   Weight of the Evidence

Padgett also claims the court abused its discretion by denying his motion for new trial on weight-of-the-evidence grounds. "We generally review rulings on motions for new trial asserting a verdict is contrary to the weight of the evidence for an abuse of discretion." *State v. Ary*, 877 N.W.2d 686, 706 (Iowa 2016).

> A verdict is contrary to the weight of the evidence only when a greater amount of credible evidence supports one side of an issue or cause than the other. In other words, the question for the court is whether a greater amount of credible evidence suggests the verdict rendered was a miscarriage of justice. Appellate courts review the entire record to determine whether a proper basis exists to affirm the district court's denial of the defendant's motion for new trial.

*State v. Hasvold*, No. 24-0234, 2025 WL 2235743, at *3 (Iowa Ct. App. Aug. 6, 2025) (cleaned up).

Padgett claims "[t]he evidence in the present case preponderated heavily against the guilty verdict on the identity element of the offense—namely as to the conclusion that Padgett was the perpetrator of the homicide." Padgett's claim "is just a repackaging of his challenges to the sufficiency of the evidence." *State v. Jenkins*, No. 21-1718, 2023 WL 4759448, at *8 (Iowa Ct. App. July 26, 2023). In any event, the district court considered the evidence Padgett points to, as well as other evidence in the record, in determining the verdict was not contrary to the weight of the evidence. *See* Iowa R. Crim. P. 2.24(2)(b)(7). Upon our review, we do not find the court "exercised its discretion on grounds or for reasons clearly untenable or to an extent clearly unreasonable." *State v. Reeves*, 670 N.W.2d

199, 202 (Iowa 2003).  Accordingly, we affirm the court's denial of Padgett's motion for new trial.

**AFFIRMED.**